**MUELLER v. SUTHERLAND et al.**

No. 4340.

Court of Civil Appeals of Texas. El Paso.

Nov. 18, 1943.

Rehearing Granted Jan. 20, 1944.

Rehearing Denied Feb. 3, 1944.

Lloyd & Lloyd, of Alice, for appellants.

Keys, Holt & Head and Tillman Smith, all of Corpus Christi, and Carmel F. Davis and Perkins & Floyd, all of Alice, for appellees.

PRICE, Chief Justice.

This appeal is from a judgment of the District Court of Jim Wells County. We shall almost literally adopt the statement contained in appellants' brief as to the nature and result of the suit.

The appellants are Augusta Mueller, a widow, and her children. They now own Tract 2, containing 124.2 acres, and Tract 3, containing 124.7 acres, in the F. S. Schleicher Subdivision of 1502.9 acres of land in Jim Wells County, with the exception of 24 acres in the southwest corner of Tract 3, sold by them to Henry Deuval, Sr., and with a certain other exception later noted. The Deuval tract of 24 acres is not involved in this controversy. However, it may be noted that the sale thereof left appellants owning 100.7 acres in Tract 3.

On January 26, 1938 appellants executed in favor of appellee Anderson-Prichard Oil Corporation an oil, gas and mineral lease which covers Tract 2 and the aforesaid 100.7 acres of Tract 3. Subsequently the lease as applied to the 100.7 acres in Tract 3 was conveyed to and is now held by appellee Atlantic Refining Company; otherwise, there has been no change to the title to that lease. All of the royalty, which is one-eighth, under these two tracts is owned by appellants and appellees John F. Judge and Gilbert W. Judge, except under 24 acres of land owned by Alfred Nollkamper. Appellee Southern Minerals Corporation is a party because it purchased and has impounded the proceeds of the royalty from oil produced from Tract 2.

By deed dated February 16, 1938, appellants conveyed a tract of 24 acres of land out of Tracts 2 and 3 to Farmers State Bank of Orange, Texas. Appellee Nollkamper later acquired that tract, which was subject to the oil and gas lease above mentioned. Appellees J. W. Sutherland, A. G. Thompson, George E. Gray, Maston Nixon, J. C. Hatridge and Nathan Pitcairn purchased and now own a portion of the royalty under that 24 acres of land. The controversy involved in this litigation revolves about this particular tract, which we shall hereafter refer to as "the Nollkamper land."

The north 12 acres of the Nollkamper land lies in Tract 2 and is under that portion of the aforesaid oil and gas lease now owned by Anderson-Prichard Oil Corporation and there is a producing well thereon. The south 12 acres lies in Tract 3 and is under the portion owned by the Atlantic

Refining Company, and there is a producing well thereon.

In the field in which the aforesaid land is located the Railroad Commission has limited the drilling to one well on each 20 acres by virtue of its authority under Rule 37, and has also fixed the quantity of oil, usually referred to as "allowable," that can be produced from each well on the basis of that acreage. There are two wells drilled on the Nollkamper 24 acres of land, one on the portion lying in Tract 2, and the other on the portion lying in Tract 3.

Appellees Sutherland, Thompson, Gray and Nollkamper brought this suit to recover their share of all the royalty produced from the Nollkamper 24 acres, alleging that they and the appellees Nixon, Hatridge and Pitcairn own all the royalty under that tract. In their cross action Nixon, Hatridge and Pitcairn sought the same relief.

Southern Minerals Corporation and the Atlantic Refining Company, being purchasers of the oil, in their answers set out the amount of oil they each purchased and tendered the proceeds of their various purchases into the Registry of the Court.

Defendants John F. Judge and Gilbert W. Judge disclaimed any interest in the 24 acres of land, but alleged they owned one-fourth of the royalty under the remainder of Tracts 2 and 3 covered by the lease.

Appellants answered that those appellees who own the royalty under the Nollkamper 24-acre tract were entitled to only 12/20ths of the total royalty produced from each of the wells under the spacing rule and allowable made and fixed by the Railroad Commission of Texas. They based this contention upon the fact that the two wells drilled upon the Nollkamper lands were drilled upon two units, each composed of 12 acres belonging to the appellees and 8 acres belonging to appellants.

The trial court sustained the two special exceptions of the royalty owners in the Nollkamper land directed at paragraphs seven and eight of appellants' Second Amended Original Answer, and the appellants having declined to further amend, the court struck from their answer the aforesaid pleaded defense of appellants. Upon the trial of the case the court refused to permit appellants to introduce any evidence in support of that defense. Judgment was rendered for all of the appellees as prayed for. Plaintiffs were quieted in the title as to the royalty interest and recovered all royalty payments from the two

wells on the 24-acre tract. Appellants perfected this appeal.

In this case the specific ground of error urged is as to the sustaining by the court of a special exception urged to paragraphs seven and eight of Appellants' Second Amended Original Answer.

Paragraphs seven and eight are as follows:

"VII. These defendants allege that prior to and at the time of the drilling of each of the wells on the twenty-four (24) acres of land conveyed to Alfred Nollkamper as aforesaid, divided into two tracts of approximately twelve (12) acres each as described in plaintiffs' Petition, as well as at the time of the acquisition of the oil, gas, mineral and royalty rights, if any, of the plaintiffs and the other defendants herein, respectively, no well could be drilled under the laws of this State in search of oil in the Wade City Field where said tract of land is located on a tract containing less than twenty (20) acres without a special permit from the Railroad Commission of the State of Texas; that if any well was and is so drilled on a smaller tract than twenty (20) acres, the amount of oil that could be produced from such smaller tract was and is reduced in the ratio that the acreage in such smaller tract bears to the twenty (20) acre tract allotted for the drilling of each well under the rules and regulations of the Railroad Commission of the State of Texas; and that such rule was and is based upon the fact that one well on each twenty (20) acres of land will drain all of the oil from such twenty (20) acre tract.

"That in order to withdraw the full allowable of oil under the rules and regulations of the Railroad Commission of Texas, adopted pursuant to the laws of this State to comply with such spacing rule, it is necessary that twenty (20) acres of land be allotted to each of such wells referred to in plaintiffs' petition; that, as a result of such requirement, sixteen (16) acres of land belonging to these defendants, amounting to eight (8) additional acres to each twelve (12) acre tract described in said petition, were and are in fact allotted to each such well, that is, each such well has been and is now producing the amount of oil allowed each twenty (20) acres of land for a well drilled thereon; that the plaintiffs and the other defendants herein are not entitled to receive any greater portion of the royalty from the said oil wells, or either of them, so drilled and now producing oil from

the 24 acres of land acquired by Alfred Nollkamper as aforesaid than such amount of approximately twelve (12) acres on which each well is located bears to the twenty (20) acres prescribed by the Railroad Commission of the State of Texas for the spacing of a well producing oil in the Wade City Field; and that should the ownership of the plaintiffs and other defendants in said twenty-four (24) acres of land be established, as contended for by them, then these defendants say that the plaintiffs and the other defendants are not entitled to recover from either of such wells more than their proportionate part of 12/20ths of the royalty produced from either of said wells.

"VIII. That there has been and is being taken and drained from the land belonging to these defendants 8/20ths of the oil produced from each of the wells drilled on the tract acquired by plaintiff Alfred Nollkamper, as aforesaid, since said wells were completed; and that these defendants should recover and be awarded the royalty therefrom as they own their interests therein."

In view of the fact that some question is raised as to the sufficiency of the special exceptions we here reproduce same.

Defendants Nixon, Hatridge and Pitcairn urge this exception:

"These defendants specially except to Paragraphs VII and VIII of said second amended original answer for the reason that the facts set forth therein constitute no basis for a cause of action against them or any defense to the cause of action alleged by these defendants, but that such facts are wholly irrelevant and immaterial to any of the issues involved in this case."

The special exception urged by plaintiffs was as follows:

"Plaintiffs specially except to Paragraphs VII and VIII of said Answer for the reason that the allegations therein contained constitute no defense to Plaintiffs' cause of action as set out in their First Amended Original Petition, nor any basis for any cause of action against them, but on the contrary that such allegations, even if true, are wholly irrelevant and immaterial to any of the issues involved in this suit."

Plaintiff appellees sought a vindication of their royalty interests in the two wells located on the 24 acres in question. They likewise sought recovery of the value of the royalty oil already produced from the two wells. By virtue of their deed from appellants they owned the surface and mineral rights which appellants had not by their lease already conferred upon the Anderson-Prichard Oil Corporation. In short, said appellees' rights in the lands were subject to the prior lease of appellants to Anderson-Prichard Corporation. A royalty right to the extent of one-eighth appertaining to a well on land owned by the beneficiary includes the right of enjoyment of one-eighth of all oil lawfully produced from that well.

Where an owner sells a tract of land out of a larger tract, the entire tract being subject to an oil and gas lease, the grantee of the smaller tract acquires a royalty right as to wells drilled on his land by his grantor lessee. This right is to the one-eighth royalty in oil lawfully produced from wells located on his land. Japhet v. McRae, Tex. Com.App., 276 S.W. 669, 670.

The above cited case approves the following proposition:

"Where the lessor of land for oil and gas, subsequently to the execution of the lease, but prior to the development of the land and the production of oil or gas under the lease, sells a portion or portions of the land to others, and oil and gas are thereafter produced under the lease from some portion of the leased premises, the royalties therefrom belong to the owner of the particular tract upon which the well is located, and the owner or owners of other portions of the leased premises have no interest therein."

In accord with Japhet v. McRae is Hinds v. McCord, Tex.Civ.App., 45 S.W.2d 442. The above quotation from the opinion in Japhet v. McRae announced a sound and sustained legal proposition.

It is undisputed that as to the 24 acres in question plaintiff appellees have a royalty interest in the one-eighth royalty reserved in the basic prior lease.

We take it to be elementary that the right conferred by the lease on Anderson-Prichard Corporation was to develop the land covered thereby as a unit. Its partial assignee, the Atlantic Refining Company, acquired the same right insofar as acreage was assigned to it.

Paragraphs seven and eight of appellants' second amended original petition are somewhat vague and indefinite. Fairly deducible therefrom we think is that wells Nos. 5 and 8 situated on the 24-acre tract in question were producing 8/20ths more oil than the allowable for a tract of this size under the rules and regulations of the Rail-

road Commission applying to the field in question; that this 8/20ths excess production was draining from an area covered by contiguous wells on the lands of appellants in which appellants had a royalty interest under the Anderson-Prichard lease.

There is attached to appellants' brief a purported copy of "Special Order Adopting and Promulgating Field Rules for the Wade City Field, Jim Wells County, Texas," purporting to have been made on April 8, 1940. No such document or copy thereof was introduced in evidence. Neither defendant appellees nor plaintiffs question the correctness of this copy. As to spacing, Rule 1 provides:

"No well shall hereafter be drilled for oil or gas at any point less than nine hundred thirty-three (933) feet from any drilling or completed well on the same lease or less than three hundred thirty (330) feet from any property line."

The rule provides that upon application a special permit may be obtained where it is necessary to prevent confiscation or waste.

Rule 17 of the Order is as follows:

"The daily total field oil allowable as fixed by the Commission shall, after deductions have been made for wells incapable of making their allowables, be distributed among the producing wells in the field capable of making their allowables on the following basis:

"The daily acreage allowable for each well shall be that proportion of seventy-five (75%) per cent of the daily field allowable which the acreage assigned to the well bears to the total acreage assigned to all the wells in the field. The daily per well allowable for each well shall be determined by dividing twenty-five (25%) per cent of the total daily field allowable by the number of producing wells in the field. The total daily allowable for each well shall be in the sum of its acreage and per well allowable.

"The basic unit of acreage allocation shall be twenty (20) acres, except that the last unit on a tract shall have a credit of a maximum of thirty (30) acres, after the lease has been drilled to its final density. Tracts of less than thirty (30) acres and more than twenty (20) acres will be credited on the basis of actual acreage. No acreage shall be assigned to any well which is located at a distance greater than 1050 feet from the well."

The total acreage included in appellants' lease to Anderson-Prichard is 225.6 acres. Under this lease there have been drilled, up to the date of the trial, fifteen producing wells. Wells 5 and 8 on the 24-acre tract in question are considerably less than 933 feet distant from each other. As to wells on other portions of the lease there are several that are considerably less than 933 feet the one from the other. The record fails to show what wells, if any, were drilled under special permits provided for in the Special Order as to the Wade City Field made April 8, 1940.

By their lease covering Tracts 2 and 3 appellants conferred upon their lessee the right to develop all the land subject thereto as a unit.

In the content of this right, was to drill oil wells thereon at such places as it elected, provided the election was in consonance with the valid rules and regulations of the Commission, subject, of course, to the duty to drill offset wells if such were necessary and permissible. When appellants deeded the twenty-four acres to defendant's grantee they had notice of this right. Appellees took the twenty-four acres subject to such right of the unitary development. In short, the rights of appellees and appellants were subject to the lawful acts of the Anderson-Prichard Corporation.

The property rights of owners or lessees between each other are unaffected by the valid rules and regulations of the Commission respecting the development of an oil field. Brown v. Humble Oil & Ref. Co., 126 Tex. 296, 83 S.W.2d 935, loc.cit. 944, 99 A.L.R. 1107; Magnolia Petroleum Co. v. Blankenship, 5 Cir., 85 F.2d 553.

If the proposition just asserted be correct, in the opinion of the writer the following proposition is corollary thereof: The only remedy an owner of land has to prevent drainage from his land by an oil well lawfully existing and so operated on contiguous land of another is by lawful counter drilling. Further, a lessor or one in privity with him may only demand lawful development in accordance with the lease.

It is obvious, we think, that consistent with the object and purpose of conservation that the rules and regulations of the Commission should, in the regulation of production, do, as far as possible and practicable, justice between owners and lessees. Even though this be the purpose of the rules prescribed, such is the complexity

and volume of human transactions to which same are applicable that in some cases, in theory at least, the end may not be attained.

In any event, the trial court entered the only judgment that could have been entered as to the title of the royalty in the twenty-four acres. If royalty payments or production be divorced from the production of a specific well in the absence of a proration agreement between the parties, infinite confusion would result. A developing lessee or owner might be compelled to share the production with a non-developing owner or lessee. The law of capture so long applied in nearly all the states producing oil would be repealed by the rules of the commission. These rules do not purport to accomplish this. The land owned by appellants is being developed—developed under the same rules and regulations that apply to the twenty-four acres in question as to which, by their deed, they vested in appellees. If these rules and regulations or their administration operate unfairly the appellants are not without remedy. Relief may be sought in a proper tribunal; that is, in the Travis County District Court, the court given exclusive jurisdiction, they may seek their annulment.

The content of a royalty right is to the proportionate part of all the oil lawfully produced from a well. A cause of action arises for damages to an adjoining owner if unlawful means are used to increase the production of the well. Grayce Oil Co. v. Peterson, 128 Tex. 550, 98 S.W.2d 781.

If appellants here intend to attack these rules or their administration, the attack is collateral. It would most certainly require the introduction of evidence to show the allowable of these two wells in question is excessive.

It is contended the special exceptions sustained were general in character and amounted to no more than general demurrers, and for that reason the case should be reversed. The exceptions were of a most general character and tendered only an issue of law, and were, we think, in violation of Rule 90, Texas Rules of Civil Procedure.

It is our view of the matter that the stricken allegations, taken with the rest of the answer of appellants, established title in Nollkamper to all royalty oil from wells five and eight on the twenty-four-acre tract. It is not contended in paragraphs seven and eight that the wells in question were unlawfully drilled—in fact we think it is impliedly conceded that they were lawfully drilled.

In our opinion the only way in which appellants could establish any interest in and to the royalty oil produced from wells on the twenty-four acres in question was by grant or contract, or a production of oil beyond the lawful allowable from the two wells on the twenty-four-acre tract. If the exceptions in question had specified such a ground, there could be no doubt of their sufficiency. Had they been so specific, if the facts justified, the appellants could have amended and shown an interest arising by contract or grant, or the excessive unlawful production of oil therefrom. Appellants claim no right arising from contract or grant. The undisputed facts, that is, the evidence and the averments and facts contained in paragraphs seven and eight, show that their claim is not founded on either contract or grant.

If, as a matter of fact, wells 5 and 8 have and are producing beyond their lawful allowable and as a result thereof oil was and is being drained from other wells in which appellants have a royalty interest, they have a cause of action therefor. Peterson v. Grayce Oil Co., Tex.Civ. App., 37 S.W.2d 367; Id., 128 Tex. 550, 98 S.W.2d 781.

The operator of an oil well is entitled to produce only the oil permissible under the valid applicable rules of the Railroad Commission. A rule of that body basing the allowable in part on the acreage appurtenant to a well must be intended to permit the owner to produce a fair proportion of oil naturally flowing under his land. If this is not the intention, the enforcement of such a rule would seem to have a logical tendency to produce that result.

The basis used for fixing the allowable on wells 5 and 8 on the 24-acre tract is in a manner set forth in the challenged part of the answer. Neither the pleading nor the proof shows what was the actual allowable for wells 5 and 8. In fact it was neither distinctly alleged nor proved that the Commission had fixed any allowable as to the two wells in question.

The spacing of wells and their allowable have for their basis the rules promulgated by the Railroad Commission. In administering these rules same are binding on the Commission as well as those interested in the area to which same are applicable. If the allowable fixed by the Commission as to a specific well is too high under its own

rules, then its ruling relative thereto may be attacked—may be attacked in any court if the violations of the rules appear from the face of the record; may be attacked directly only in the District Court of Travis County, if evidence is required to show the invalidity of its action. Alpha Petroleum Co. v. Terrell, 122 Tex. 257, 59 S.W.2d 364.

We cannot say from this record as to whether facts exist authorizing a collateral attack on the allowable of these two wells as fixed by the Commission—cannot say as a fact that an allowable has in fact been fixed by the Commission. There may or may not be an unlawful excess production of oil from wells 5 and 8.

Rule 90, Rules of Civil Procedure, abolishes the general demurrer. No longer may the legal sufficiency of a pleading to state a cause of action be so challenged by one participating in the trial. Rule 91 requires that a special exception be specific. The main purpose of the two rules is to afford the party whose pleading is challenged as to its legal sufficiency an opportunity to intelligently amend so as to cure the specified defects, if the facts exist justifying such amendment. If the pleading be legally defective, the pleader is specifically apprized of such defect. The effect of the rule is that a demurrant must plead his issues of law specifically.

In view of the purposes of the two rules just discussed, we do not feel that we are warranted in affirming this case as urged by appellants under Rule 434. The stricken paragraphs in a way indicate facts under which appellants may have had an interest in the funds involved. We cannot say what evidence might have been introduced under amended pleadings. A special exception that the pleading failed to show any rights in appellants by contract or grant, failed to show any unlawful production from wells 5 and 8, if sustained, would have afforded appellants an opportunity to amend curing these defects.

We have discussed Rule 37 as promulgated by the Railroad Commission as applicable to the field in question. These rules were not introduced in evidence. There is grave doubt in our minds that we had the right to take judicial notice of these rules. Same were attached to appellants' brief and in some instances referred to in those of appellees. If there be another trial of this case on amended pleadings, we suggest that the parties relying or assailing the action of the Railroad Commission prove such action in the customary way.

For the error in sustaining the general demurrers, the case is reversed and remanded.

WALTHALL, J., not participating.

SUTTON, Justice (concurring).

The writer readily agrees to the judgment in this case, but is unable to agree with the law announced by the CHIEF JUSTICE as applied to the royalty owners' respective rights. It may be the disposition of the case renders unnecessary and uncalled for any comment other than that necessary on the disposition of the general demurrers. I undertake briefly to point out wherein I disagree on the law.

The Supreme Court has upheld as valid the rules and regulations of the Railroad Commission which limit the quantity of oil that may be reduced to possession through a well or wells located on the lands of any particular owner or owners, thus equalizing the recovery between separate owners above a given pool and protecting against the acquisition by one of a greater quantity of oil than that lying beneath his surface. Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S.W.2d 935, 99 A.L.R. 1107. The actual situation presented here is: Overall-owners of the 7/8ths working interest, in compliance with lawful regulations of the Commission, have drilled two wells upon twenty acres each allotted by the rules of the field promulgated by the Commission according to the allegations stricken. The ownership of the royalty under the acreage is divided between contending owners, eight acres to one and twelve to the other. It would be inequitable if lawful to require the over-all owners to drill more wells and split the allowable, or to reduce their allowable for the wells drilled. It does seem to the writer the rule which would make legal the regulation limiting the production to what an owner is equitably entitled to and to avoid draining his neighbor's oil away would enable the adjoining royalty owner to recover his proportionate share when he is wholly powerless to protect his interest and ownership. He cannot drill off-sets, because he owns no working interest. He cannot limit the production of the over-all owners of the working interest because they are within the regulations. It does seem one under such circumstances should not be held

to notice and anticipation of a condition only the Deity could foretell.

If the overall ownership of the working interest were limited to the 12 acres to each well, as is the ownership of the royalty in plaintiffs and the non-appealing defendants, then the allowable would be and could be reduced to 12/20ths of the field allowable and plaintiffs' and non-appealing defendants' royalty accordingly reduced to 12/20ths of what is being produced through wells 5 and 8—this to prevent inequities and the wrongful taking of oil belonging to adjoiners. The owners of the royalty in the 24 acres divided equally between wells 5 and 8 are at no expense incident to the production. This expense is borne by the owners of the working interest which extends to and includes the royalty owned by both appellants and appellees. The royalty produced is delivered free.

Under such circumstances, entirely beyond the control or avoidance of appellants, it seems justice and equity require a division to avoid a wrongful taking.

The Japhet case is not in point. The fact situations presumed and assumed to illustrate the conditions obtaining in that case are not the same or similar to those here. It is true a producing well may be on the very edge of a pool and as proposed in that opinion the Japhet wells on it and the five acres off of it. It does not appear there the field was operating under any proration rules such as are here. That case ante-dates the spacing and proration statutes and regulations as applied to the field here. The lands owned here by the respective parties are shown beyond question to be over the same pool. If the law asserted by the CHIEF JUSTICE is the applicable rule, then in the opinion of the writer, many thousands of royalties in small tracts owned by as many separate owners will be rendered worthless, and if the courts are powerless to remedy the situation, it warrants legislative action.

As said in the motion for rehearing in Magnolia Petroleum Co. v. Blankenship, 5 Cir., 85 F.2d at page 557, it is implied by the Act, if not expressed that an owner of oil in place and without power, because of the intervention of the State through the Railroad Commission to reduce it to possession, is not wholly to lose his oil. But the royalty owner, unlike Blankenship, the owner of the working interest, is powerless to drill a well and thereby recover his royalty.

On Motion for Rehearing.

PRICE, Chief Justice.

The majority of the Court on consideration of the respective motions by appellees and appellants is of the opinion that our judgment reversing and remanding this cause is erroneous and that the judgment of the trial court should be affirmed.

Appellants' sole and only claim herein was, they were, as a matter of law, entitled to 8/20ths of the proceeds of the royalty oil produced from wells 5 and 8 located on the 24-acre tract in question. The factual basis of the claim was set forth in the stricken portion of their answer. This factual basis was insufficient to support the title asserted. It is clear from the evidence and pleading that facts were not omitted from the plea that could have made same sufficient. The basic claim to royalty is contained in the lease of appellants to the Anderson-Prichard Corporation. This lease contains these provisions:

"The rights of either party hereunder may be assigned in whole or in part and the provisions hereof shall extend to the heirs, successors and assigns, but no change or divisions in ownership of the land, rentals or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee."

Further:

"After the discovery of oil, gas or other minerals in paying quantities on said premises, Lessee shall reasonably develop the acreage retained hereunder, but in discharging this obligation it shall in no event be required to drill more than one well per twenty (20) acres of the area retained hereunder and capable of producing oil, gas or other mineral in paying quantities."

Neither this lease nor appellants' conveyance of the twenty-four acres in question provided for any pooling of royalties from any of the wells to be drilled on either area. There is no complaint here that the area covered by the basic lease has not been developed by the lessee or its assigns in strict compliance with the terms thereof—no contention that there has been in any way a want of conformity to the rules and regulations of the Railroad Commission applicable to the Wade City oil fields. The contention is that as a result of the application of those rules an involuntary pooling of the royalty oil between appellants and the owners of the

twenty-four acres subject to the lease has been accomplished.

■ It is thought to be fundamental that the rules and regulations of the Railroad Commission cannot have the result of effecting a change or transference of property rights. There is nothing in such rules as evidencing a purpose to effect any such change.

The contention of the appellants here does not differ in essence from the contention of McRae in the case of Japhet v. McRae, Tex.Com.App., 276 S.W. 669. There the contention was that the owners of the ten acres on which there was production were entitled to only 10/15ths of the royalty, the basic lease being on one tract of fifteen acres. The contention here, in the last analysis, is that appellees are entitled only to 24/225ths of the total royalty produced from the 225 acres covered by the basic lease. The basis of the claim here may in some respects differ, in that in Japhet v. McRae one of the theories was that the owners of the five-acre tract were tenants in common in interest in proportion to their acreage in the royalty reserved in the basic lease to the fifteen-acre tract. Here the only basis for a claim of title is the rules of the Railroad Commission. There the holder of the royalty interest in the five-acre tract had no way to compel drilling on that tract. Here the same situation might exist although there has been adequate development of the entire area.

Appellants assert no wrong doing on the part of their lessee nor on the part of appellees. The basic lease certainly gave the lessee the right to develop the land in accordance with the terms thereof. Under the evidence the wells as spaced and as producing seem adequate in all respects to protect appellants in the acreage in which they have a royalty interest. If there be any unequal production of oil so far as appellants are concerned, it results from their voluntary contract in the basic lease and their failure to guard against same in their conveyance of the twenty-four acres.

■ The most serious question in the case is the error of the court in sustaining the general demurrer. This was clear violation of Rule 90, Texas Rules of Civil Procedure. Even with paragraphs seven and eight stricken, enough remains in the answer to permit appellants to show that plaintiffs were without title to 8/20ths of the royalty oil produced from wells 5 and 8. At least the general denial was assumed throughout the trial to be sufficient for this purpose. In making the showing of want of title in appellees it was certainly competent for them to show they had title to the 8/20ths interest. We take it that under Rule 434, Rules of Civil Procedure, if it appears from the entire record that injury did not result from the erroneous ruling, that the judgment should be affirmed.

In this case we think the pleading, after paragraphs seven and eight were stricken, was sufficient to have permitted appellants to show all facts, the basis of their alleged right. In arriving at this conclusion we take into consideration the facts established by the undisputed evidence and accord absolute verity to the facts alleged in paragraphs seven and eight.

It is true that the general demurrer is no longer a part of our pleading. But we cannot conceive of how appellants were injured. There is presented a case of error without injury. Appellants could not have amended so as to make their plea good. Ryall v. Allen, 143 Ala. 222, 227, 38 So. 851; De Leon v. Walters, 163 Ala. 499, 50 So. 934, 19 Ann.Cas. 914.

In regard to the two Alabama cases above cited it is to be noted that for a long time Alabama has had a code provision which abolishes the general demurrer in about the same terms as our Rule 90. Suppose a plaintiff should seek to recover for prenatal injuries. For such injuries there can be no recovery. Because the trial court sustained a general demurrer to the petition must the case be reversed?

Had the trial court ignored or overruled the exception, the result would have been the same. The Rules and Regulations of the Railroad Commission could not have preserved the title to the oil after it had by natural process left the lands in which appellants were interested.

It is ordered that the judgment reversing and remanding the cause be in all things set aside and judgment is ordered entered that the case be affirmed.

Justice SUTTON adheres to the views expressed in his concurring opinion on the original disposition of the case, but will further state his views by way of dissent herein.

McGILL, Justice (concurring).

I concur in the affirmance of the judgment of the trial court for the reasons stated by the CHIEF JUSTICE in his opinion on motion for rehearing. The disposition is in accord with the general rule, that if the judgment rendered is the only judgment that could have been rendered under the pleadings and evidence in the case it will be affirmed, notwithstanding error in some of the legal conclusions of the trial court, 3 Tex.Jur. p. 1246, Sec. 873; also that the erroneous sustaining of a demurrer to a part of a plea or answer is harmless where the defendant receives the same benefit or advantage under his general denial. 5 C.J.S., Appeal and Error, § 1687, p. 858.

Not only does the evidence negative any right or title of appellants by grant or contract or by unlawful production to the one-eighth royalty in oil produced from wells 5 and 8, but appellants' answer affirmatively negatives any such right or title by the allegation "that on November 28, 1938 plaintiff Alfred Nollkemper acquired" the twenty-four acres on which wells 5 and 8 are located, and by paragraphs seven and eight, the gist of which is that the production from wells 5 and 8 is in accordance with the Rules and Regulations of the Railroad Commission. Had the exceptions been overruled and appellants permitted to introduce proof of every fact alleged in paragraphs seven and eight, the judgment must necessarily have been the same.

Under Rule 434, Rules of Civil Procedure it seems to me that there must necessarily be a distinction between the erroneous sustaining of a general demurrer to a petition under Rule 90, Rules of Civil Procedure, which would require a reversal if assigned as error, as indicated in Jones v. Ross, Tex. Sup., 173 S.W.2d 1022, and the erroneous sustaining of a so-called special exception which, in effect, is a general demurrer to specific paragraphs of an answer which allege no defense or ground for affirmative relief where the record affirmatively discloses that no defense or ground for affirmative relief exists. This view finds support to some extent in Kansas Life Ins. Co. v. First Bank of Truscott, Tex.Civ. App., 47 S.W.2d 675, affirmed 124 Tex. 409, 78 S.W.2d 584.

SUTTON, Justice (dissenting).

Since the majority of the court on motion for rehearing has receded from the original disposition of this case, the writer deems it advisable to revise the former statement of his views and add thereto a reference to the case of Marrs et al. v. R. R. Commission of Texas, Tex.Sup., 177 S. W.2d 941.

The writer is not particularly interested in the matter of the demurrers, because they work no especially harmful results.

The exact point over which the disagreement arises is, as laid down by the majority opinion, the owner of royalty under a less acreage than that allocated to a well by the Railroad Commission may by reason of his ownership of the less acreage receive all the royalty brought to the surface through such well though some of it is drained from the other allotted acreage belonging to one who is powerless to protect his ownership of the royalty by bringing it to the surface himself.

The exact situation in the instant case is: The Commission, under its spacing rules, allocates one well to every twenty acres. Theoretically each well will produce all the oil under each twenty acres. The producer, who has the exclusive right to develop and produce the oil, has located his well upon twelve acres owned by one set of royalty owners. The royalty under the other eight acres is owned by others. The contribution is in the nature of an involuntary one because of the spacing rules.

It occurs to this writer the royalty ownership is undivided as much so as if the parties owned undivided interests in the same proportions under the entire twenty acres. The ownership is not in the well but in the land. The royalty is produced through the well but from the land. None of the royalty owners own any interest in the well. The producers get the 7/8ths by virtue of their ownership and produce the royalty for the rightful owner or owners. The owners of the twelve acres do not claim the royalty produced through the well from the twenty acres by virtue of ownership of the well or of all the royalty, but because of the location of the well upon their particular twelve acres.

This writer regards the basis of the claims made here by the appellants on a parity with the rights asserted by the royalty owners in the Marrs case, supra, and all the reasons assigned for the vindication of those rights applicable here. The language found at page 204 in that opinion is particularly applicable. A royalty own-

er situated as these appellants, and there are countless numbers of them, will have his holdings rendered worthless by the application of the rule generally. It is clearly the taking of one man's property and the giving of it to another.