**NALE v. CARROLL et al.**

No. 6697.

Court of Civil Appeals of Texas. Texarkana.

Jan. 21, 1954.

Rehearing Denied March 25, 1954.

Gossett & Gossett, Hurst & Burke, Long-view, Harry S. Pollard, Austin, for appellant.

Lasseter, Spruiell, Lowry, Potter & Lasater, Tyler, A. A. Garrett, Dallas, for appellees.

FANNING, Justice.

This is an appeal by John T. Nale from a judgment rendered for the defendants in a suit brought by John T. Nale as plaintiff in which Herman Leath and wife intervened.

Trial was to the court without a jury, and after judgment the trial court filed his findings of fact and conclusions of law. No point is raised which challenges the findings of fact and we consider them as established by the evidence. The material facts however are not in dispute.

On and prior to April 8th, 1935, Leath and wife were the owners of a tract of land in the Mary Van Winkle Survey in Gregg County, Texas, in the town of Kilgore. A survey of the tract shows that it contained .51 acres, and referred to hereafter as the one-half acre tract. In 1935 an oil, gas and mineral lease was given by Leath and wife to R. E. Moore, and on April 8th, 1935,

Moore obtained a permit to drill a well on the tract, as an exception to Rule 37 of the Regulations promulgated by the Railroad Commission of Texas. This permit located a well to be drilled at a definite point 101 feet southwest of the northeast line and 25 feet southeast of the northwest line. On October 25, 1935, Leath and wife deeded a strip on the south and east side of the one-half acre tract to the City of Kilgore for street purposes, reserving the minerals under the right of way so deeded. The strip on the south side is known as Knowles Street.

On May 22, 1944, Leath and wife conveyed by general warranty deed .093 acres on the north side of Knowles Street and on the west side of the total tract to Roy H. Laird. On the same date Laird conveyed by general warranty deed the .093 acre tract to appellant Nale, which tract will be referred to as the 9/10 acre tract, or as the Nale tract.

On January 7th, 1950, Leath and wife conveyed by general warranty deed to appellee Mrs. Bessie Longshore the remaining portion of the original one-half acre tract, consisting of .17 acres. This tract may also be referred to as the Longshore or Carroll tract.

On July 17th, 1950, Mrs. Longshore executed an oil, gas and mineral lease to B. F. Carroll, who subsequently assigned a one-half interest in the lease to appellee Mazie Wrather.

The lease from Leath and wife to Moore in 1935 was not offered in evidence, but all parties assumed that it had terminated and no proof was offered that such lease was in effect.

Moore had never drilled a well under the permit granted to him, but such permit had not expired and had never been cancelled. Under the conveyances above mentioned Mrs. Longshore became the owner of the land at the location where the well was designated to be drilled, and on or about February 1, 1950, Carroll began the drilling of a well at said location. It was completed as a producer of oil on February 25, 1950.

The well was drilled under the original permit granted to Moore.

On January 15, 1950, Nale executed an oil, gas and mineral lease to Ralph Massad, covering the .093 Nale tract. On February 23, 1950, Massad, as lessee of Nale, applied to the Railroad Commission for a permit to drill on said Nale tract. This application was denied on April 18, 1950, and no appeals taken therefrom. On January 22, 1951, after the oil, gas and mineral lease from Nale to Massad had terminated, Nale made an application to drill a well on his tract which application was denied by the Railroad Commission, and no appeal was taken therefrom. No well has been drilled on the Nale tract and no evidence was offered in the trial court to establish that a well on the Nale tract, if drilled, would produce oil.

Nale brought this suit for an apportionment of the oil, gas and minerals from said well on the basis that the square-footage of land owned by him bears to the total square-footage of the one-half acre. Leath and wife also claimed participation in the oil, gas and minerals in the proportion that the square-footage deeded by them to the City of Kilgore for street purpose bears to the total square-footage of the one-half acre. The trial court denied the claims of both Nale and Leath. At the time of trial Carroll had died intestate. There was no administration on his estate and no necessity therefor. His interest was community property, and is represented by his surviving wife and children, appellees.

Appellant asserts that this is a case of first impression, not only in Texas, but that he has searched for authorities in all other jurisdictions in this country and found no decision directly in point. While this statement is not expressly controverted by appellees, they cite no cases directly in point, but urge consideration of a number of decisions as analogous and, at least, as highly persuasive.

The deeds executed by Leath, and the deed from Laird to Nale are deeds of general warranty. They are without any restrictions or reservations concerning oil,

gas or minerals under the lands, and make no provision whatever for participation in any bonuses or royalties to be paid on oil or gas if found on any part of the one-half acre. They are silent as to any rights under the Moore permit of 1935. In this respect the situation differs from that found in Hoffman v. Magnolia Petroleum Co., Tex.Com.App., 273 S.W. 828, and Grelling v. Allen, Tex.Civ.App., 218 S.W.2d 896, wr. ref., n. r. e. In both of those cases the courts were construing the effect of provisions in the conveyances there under consideration, and the conclusions reached are based entirely upon the language of the instruments. Here we have no such provisions to construe. It is entirely a matter of law as to the rights of the respective parties under these deeds of general warranty, absent any special provisions relating to oil, gas or minerals, or the Moore permit.

■ The court found that the well was validly drilled and upon sufficient evidence we think. Appellant Nale's contention is set forth in the following portion of the first paragraph of his amended petition: "That said oil well drilling permit was of great material value to said one-half acre drilling unit and all owners of oil and gas minerals therein and thereunder; that by subsequent subdivision of the surface the owners thereof continued as co-owners of the oil and gas minerals and rights therein and thereunder, together with the oil well drilling permit, in proportion to their ownership interests, respectively."

Co-ownership of the oil produced from the well is asserted repeatedly by Nale. He urges that the deed to him subdividing the land did not have the effect of depriving him of such ownership; that the permit was a valuable property right that attached to the drilling unit of the one-half acre, and ran with the land deeded to him; that appellees have converted his part of the oil and funds derived from its sale to their own use and benefit. He also alleges a trespass by drainage.

The opening statement in the brief of the appellant reads: "This was a suit by John Nale as plaintiff, asserting a co-tenancy ownership against the heirs of B. F. Carroll," etc., in which Leath and wife intervened.

■ In resolving the questions presented we must keep in mind some well settled rules established by our courts. " * * the doctrine of ownership in place obtains in this state, the oil and gas beneath the soil being considered a part of the realty, so that, in the absence of a severance by sale or otherwise, each owner of land owns separately, distinctly, and exclusively all of the oil and gas beneath his land [See Tex. Jur., Vol. 31A, sec. 6, for authorities] *and is not a mere joint owner with other adjoining land owners in a common pool of oil beneath the several tracts of land, with a mere right to mine therefor.*" (Emphasis added.) Magnolia Petroleum Co. v. Zeppa, Tex.Civ.App., 70 S.W.2d 777, 779, wr. ref. The owner of the fee has the right to prospect for, develop and produce the oil and gas lying in place under his land, subject to the conservation laws of this state, Marrs v. Railroad Commission, 142 Tex. 293, 177 S.W.2d 941, 948, and subject to the law of capture, Elliff v. Texon Drilling Co., 146 Tex. 575, 210 S.W.2d 558, 561, 4 A.L.R. 2d 191.

■ The migratory character of oil is recognized by all authorities, although they have not dealt with this characteristic in the same way. The so-called rule or law of capture has been definitely adopted in Texas and is recognized as a law of property. It is a necessary corollary to the rule of decision stated in Magnolia Petroleum Co. v. Zeppa, supra, Marrs v. Railroad Commission, supra, and a long line of other decisions of our courts. It is a rule that recognizes fee ownership with all of its incidents, including possession, use and enjoyment, as settled law of this state, and at the same time harmonizes it with the natural law found in the fugitive character of oil and gas. Perhaps no better statement of this rule can be found than that made by Judge Folley in Elliff v. Texon Drilling Co., supra: "This migratory character of oil and gas has given rise to the so-called rule or law of capture. That rule simply is that

the owner of a tract of land acquires title to the oil or gas which he produces from wells on his land, though part of the oil or gas may have migrated from adjoining lands. He may thus appropriate the oil and gas that have flowed from adjacent lands without the consent of the owner of those lands, and without incurring liability to him for drainage. The non-liability is based upon the theory that after the drainage the title or property interest of the former owner is gone. This rule, at first blush, would seem to conflict with the view of absolute ownership of the minerals in place, but it was otherwise decided in the early case of Stephens County v. Mid-Kansas Oil & Gas Co., 1923, 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566."

It is apparent, therefore, that under the well-settled rules of this state appellant is not joint owner in any of the oil produced from the well on the Longshore land merely by virtue of the conveyances mentioned nor by the reservation of oil and gas by Leath in his deed to the City of Kilgore. If appellant's claim of joint ownership or any other right to participate in the production of the Longshore-Carroll well is sustained it must be upon some other legal or equitable consideration. The only ground asserted, and the only ground out of which it could arise, if at all, is that the Moore permit to drill an oil well at the location named therein was a property right which ran with the land when Nale accepted his deed, and which, by operation of law, was retained in Leath when he executed his deed to the City of Kilgore. If such is the law, then clearly we have engrafted an important and far-reaching exception to the long-established rules referred to.

Oil well drilling permits are granted by the Railroad Commission in the administration of conservation laws. When a permit is granted it is restricted to a specific location and none other may be substituted without approval of the Commission. Its only function, and the only right granted, is to drill a well at the particular location, and in compliance with rules of the Commission. It carries no re-strictions against assignment or transfer of the right to drill, nor against assignment or conveyance of the land in whole or in part. The area included in the application and in the Commission's order and the general location of the land are material only insofar as they inform the Commission of facts to enable it to act under spacing Rule 37. The order of the Commission granting a permit is in the nature of a license, and does not vest any interest in any person to the oil or gas in place or which may be produced. These rights last named rest upon muniments of title. A drilling permit is not a muniment of title. In Mueller v. Sutherland, Tex.Civ.App., 179 S.W.2d 801, 804, writ refused for want of merit, it is said: "The property rights of owners or lessees between each other are unaffected by the valid rules and regulations of the Commission respecting the development of an oil field. Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S.W.2d 935, loc. cit. 944, 99 A.L.R. 1107; Magnolia Petroleum Co. v. Blankenship, 5 Cir., 85 F.2d 553."

It is upon this particular point that appellant asserts absence of any authority. But we believe there are numerous authorities that have laid down principles that enable us to resolve this question. Texas courts have followed the great weight of authority in this country by adopting what is generally known as the non-apportionment theory. That theory, in the language of Judge Murrah of the Tenth Circuit in the case of Republic Natural Gas Co. v. Baker, 197 F.2d 647, 648, is "to the effect that absent an express covenant or supervening valid regulations, the owner of mineral interests under a portion of land subject to an oil and gas lease is entitled to all of the rents and royalties accruing from the production of oil or gas from that land, even though the lease may cover other tracts." In that case it was held that the spacing and proportion orders of the Corporation Commission did not provide for nor result in unitization, and to hold with appellant Republic would have amounted to compulsory unitization.

In Summers Oil & Gas, Vol. 3, sec. 608, will be found an informative history of ju-

dicial decisions on this question. The first Texas case directly facing the apportionment issue as a matter of law only, there being no provision in deeds to construe, was Japhet v. McRae, Tex.Com.App., 276 S.W. 669, 670. In that case the Commission of Appeals approved as correct the following proposition of law:

" 'Where the lessor of land for oil and gas, subsequently to the execution of the lease, but prior to the development of the land and the production of oil or gas under the lease, sells a portion or portions of the land to others, and oil and gas are thereafter produced under the lease from some portion of the leased premises, the royalties therefrom belong to the owner of the particular tract upon which the well is located, and the owner or owners of other portions of the leased premises have no interest therein.' "

In that case a 15-acre tract subject to an oil and gas lease was subdivided, the plaintiffs obtaining a deed to 5 acres and the defendants acquiring the remaining 10 acres. A well was drilled on the 10-acre tract and the owners of the 5-acre tract claimed the right to participate in the royalties on a proportionate basis. The court in denying the claim of the plaintiffs point to the fact that the deeds contained no language from which it could be said that an apportionment of royalty was in the minds of the parties at the time the deeds were executed, although such apportionment could easily have been written into the deeds. The court uses the following language: "If the rule we approve is just in all the states where it is followed, it is also just in Texas. We are not unlike the other states in any matter of substance which affects this matter. Our Supreme Court has held that oil is a part of the realty until brought to the surface, and that it can be sold in place. Japhet unquestionably bought the realty in the 10 acres. He bought one-eighth of the oil in or under that land. The lessee had the right to take full charge of the land so far as necessary to get the oil from under it. He had the title to the oil for that purpose. But, when it was brought to the surface, Japhet had the right to his one-eighth thereof. He had an equitable title to his interest in that oil, and if the lessee had made any effort to take it away from him, Japhet would have been entitled to sue him as for conversion of his property. It seems to us that the only possible justification for permitting McRae and Keeble to participate in these royalties coming out of the Japhet wells would be on the presumption, as a matter of law, that a part of the oil from the wells on the 10 acres was being drained from their 5 acres. Should there be any such legal presumption? We think not. It is well known that oil wells and dusters are found side by side within a very few feet of each other. If the Japhet wells were draining oil from the lands of any one else, it would be impossible, in the absence of proof, to say whether such drainage was north, south, east or west of the Japhet tract. But, before the drainage could possibly affect defendants in error, it must come from the north. It is entirely possible that if McRae and Keeble should be allowed one-third of this money, they would be receiving it when there was not a drop of oil on their land. It is, in any event, unjust to take away the property apparently belonging to one party and give it to another until it is shown that the latter party has been deprived of it. * * * *It seems to us that the only safe rule, and the only one free from much confusion, is one which gives the oil to the man who owns the land upon which the well is located.* Clearly, it would not be right to award the oil to those who, like Keeble and McRae, offered no proof that any of it was drained from under their 5-acre tract." (Emphasis added.)

In accord with Japhet v. McRae is Hinds v. McCord, Tex.Civ.App., 45 S.W.2d 442, by the Austin Court, in an opinion by Chief Justice McClendon. There McCord, as executor, had executed an oil and gas lease on 320 acres, and subsequently 18.26 acres of the tract was acquired by Hinds. A producing oil well was brought in on this lease outside of the 18.26 acres. The deed from McCord to Hinds made no provision for participation in royalties from any well brought in on the lease. He brought his

suit for the purpose of recovering 18.26/320 as his proportionate part of the royalties which had been paid. His contention was that the 320 acre tract was a unit, indivisible, but upon the basis of Japhet v. McRae, supra, the claim of Hinds was denied. Judge McClendon points out that there is no conflict between Hoffman v. Magnolia and Japhet v. McRae, as had been asserted in Stephenson v. Glass, Tex.Civ.App., 276 S.W. 1110, by the San Antonio Court of Civil Appeals. In our opinion there is no conflict. Neither do we think the present case is ruled by Hoffman v. Magnolia Petroleum Co. as asserted by appellant.

Also in support of Japhet v. McRae is Mueller v. Sutherland, Tex.Civ.App., 179 S.W.2d 801, 805, wr. den., w. m. This case was decided by the El Paso Court of Civil Appeals November 18, 1943. The opinion is quite extensive and we will not undertake to state the facts as they are available in the reports. We quote the following portions of said opinion:

"In our opinion the only way in which appellants [Muellers] could establish any interest in and to the royalty oil produced from wells on the twenty-four acres in question was by grant or contract, or a production of oil beyond the lawful allowable from the two wells on the twenty-four-acre tract.

"It is thought to be fundamental that the rules and regulations of the Railroad Commission cannot have the result of effecting a change or transference of property rights. There is nothing in such rules as evidencing a purpose to effect any such change. [Opinion of Chief Justice Price].

"Where an owner sells a tract of land out of a larger tract, the entire tract being subject to an oil and gas lease, the grantee of the smaller tract acquires a royalty right as to wells drilled on his land by his grantor lessee. This right is to the one-eighth royalty in oil lawfully produced from wells located on his land. Japhet v. McRae, Tex. Com.App., 216 S.W. 669, 670."

The Japhet case has been cited and its holdings followed many times. In Hill v. Roberts, Tex.Civ.App., 284 S.W. 246, 249, on authority of that case it is held that the right to oil and gas in place passes with conveyance of the surface unless specially excepted. The same effect is Bibb v. Nolan, Tex.Civ.App., 6 S.W.2d 156, wr. ref. In Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021, 80 S.W.2d 741, the Japhet case is expressly approved. In Harris v. Wood County Cotton Oil Co., Tex.Civ.App., 222 S.W.2d 331, this court applied its holding to a situation somewhat different and also as regards drainage. In Garza v. De Montalvo, 147 Tex. 525, 217 S.W.2d 988, 993, the Supreme Court speaking through Judge Hart said that the rule in the Japhet case "is the settled law in Texas", and that "This Court is definitely committed to the rule of non-apportionment in cases of ordinary conveyances".

Had these conveyances been made by Leath in the forms appearing here while a lease existed on the one-half acre executed by him in the usual form, with no reservations of oil or gas rights except the usual one-eighth royalty, it cannot be questioned that this case would fall directly in the pattern of the Japhet case, and both Nale and Leath would be denied participation in the production from the well on the Longshore tract. In view of the law as to oil in place, and of the law or rule of capture, the existence of a lease or not is not material on the issue. In all the cases referred to leases existed. But we do not think it was the intention of the courts to limit the rules stated to such facts only.

A permit to drill, granted by the Railroad Commission in administration of conservation laws, can certainly have no higher function in passing title than solemn conveyances. In Tex.Jur., Vol. 3-A, § 5, p. 27, it is said that "The conservation statutes and the regulations of the Commission made thereunder have not abolished the ownership of oil in place nor the right of capture without liability to adjoining owners." That is the broad, general base on which must rest judicial construction in related matters. The decisions referred to above have definitely established the principles upon which this case must be grounded.

It is well established that there can be no compulsory unitization in Texas, and to yield to the claims of appellants in this case would practically effect unitization.

Appellant asserts that appellees are taking oil from his land by drainage. The trial court held that no evidence was offered establishing that a well on the Nale tract, if drilled, would produce oil. Unless oil is under the Nale land, there could not be any drainage. However, the fact of drainage does not give adjoining landowners any right to the oil produced from a well on the Longshore tract.

Appellant Nale asserts that since his application for a permit to drill on his land has been denied by the Railroad Commission, he has no other remedy to right his wrong than as set forth in this case. The conservation laws of Texas are administered by the Commission. Its orders are final and conclusive until set aside in a direct appeal therefrom, and are not subject to collateral attack. If the Commission has acted arbitrarily, or contrary to law, the action may be set aside by the courts. But the courts cannot supplant the powers lodged in the Commission. If Nale felt that the Commission had acted arbitrarily, or contrary to law, in denying his application, he had the courts available to him for review. This applies also to the application made by lessee, Massad. The record shows no such appeal was taken on either application. Whatever relief appellant may feel himself entitled to must come from the Railroad Commission.

The trial court found facts sufficient in its opinion to authorize the conclusions that appellant is estopped and is guilty of laches in assertion of his claim. In view of what we have said we do not deem it necessary to discuss these questions.

Finding that the judgment rendered by the trial court is the only judgment that could properly be rendered in this case, and that no reversible error has been presented, appellant's points of error are respectfully overruled, and the judgment of the district court is affirmed.