George H. COATES et al., Appellants,

v.

Genoveva O. DE GARCIA et al., Appellees.

No. 12927.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 18, 1956.

Rehearing Denied Feb. 15, 1956.

John A. Pope, Jr., Rio Grande City, for appellant.

Charles H. Winston, Lyman D. Rogers, Robert K. Sands, Dallas, Gerald Weatherly, Rio Grande City, Rankin, Kilgore & Cherry, Edinburg, Ben Goodwin, Tyler, Strickland, Wilkins, Hall & Mills, Hill, Lochridge, King & Hodson, Mission, Shank, Dedman & Payne, Dallas, for appellee.

POPE, Justice.

This appeal presents two principal questions. The first one is whether, under the terms of a judicial partition decree, the oil and gas royalties were partitioned and segregated so that the rule of non-apportionment applies. If the partition decree was so operative, the next question is whether an order of the Railroad Commission, which allocated 682.5 acres to a producing gas well, resulted in a forced pooling among the owners of the allocated lands. The trial court held that the partition decree segregated the sub-surface and royalty, but that the Railroad Commission order caused a forced pooling. In holding that the Commission order was a forced pooling we are of the opinion that the trial court erred.

In 1934, B. P. Gonzalez and some thirty-four other persons, who owned various undivided interests, executed an oil and gas lease to a 1300.7 acre tract of land in Starr County. In November of 1940 the lands were partitioned by judicial decree. The Nelson Bunker Hunt Trust Estate is the assignee of the lease on the land covering 762.68 acres. The Trust Estate completed a producing gas well in January, 1949, on what is described by the partition decree as Tract 8–A, consisting of 154.84 acres of land. Appellants own that tract of land. Upon production, the owners of that segregated 154 acre tract claimed all the royalty on the ground that the partition decree segregated the sub-surface so there would be no apportionment among the royalty owners on the other lands. The appellees are owners of the other lands allocated to the well and claim that the royalties should be apportioned. The lease owner, The Trust Estate, impounded all royalty payments when the dispute arose and filed this interpleader suit to determine who should receive the royalty. The Trust Estate is willing to make royalty payments, either on the basis of apportionment or non-apportionment, and contends neither for one method nor the other.

The trial court correctly ruled that the partition decree worked a complete partition not only of the surface, but also of the sub-surface. The trial court also correctly concluded that the partition worked

a segregation so that "the respective allottees of tracts or shares in such partition were entitled to receive all of the royalties payable from production from his or her respective parcel or tract of land." Those conclusions by the trial court correctly state the result of the partition decree. The then owner of the lease was a party to that partition suit, together with the owners of the surface and sub-surface rights. The preliminary decree and final decree described and decreed segregated portions of the surface to named persons. No one appealed from the 1940 partition. It further provides:

"Each party to whom a tract or parcel has been awarded herein, or in the judgment rendered herein November 18, 1940, is hereby decreed not only to be the owner of the surface of the tract or tracts so adjudicated to him, her or them, but also is decreed to be the owner and holder of all of the minerals, including oil and gas and any other minerals whether similar or dissimilar, in, under and that may be produced from the tract or tracts so awarded and adjudicated to him, her or them, subject only to the oil, gas and mineral lease or leases, royalty deeds or conveyances, and mineral conveyances, adjudicated against the respective tract or tracts, and those holding under him, through royalty conveyance of mineral contracts, shall be the owner of and entitled to receive the full one-eighth royalty of all oil, gas or other minerals produced from his respective tract of land under and by virtue of any such oil, gas and mineral leases."

Garza v. DeMontalvo, 147 Tex. 525, 217 S.W.2d 988, passed on the meaning of a partition agreement, insofar as it affected sub-surface rights. The Court, in language that could for the most part be here paraphrased at length, determined that the sub-surface was also partitioned. The partition agreement in the Garza case made no specific reference to nor declaration about the minerals or sub-surface rights, but held,

nevertheless, that the intent was to divide the minerals also. Having reached that conclusion, the Court then applied the settled Texas and majority rule of non-apportionment. The partition decree in the present case expressly declares that the subsurface is partitioned, and that the owner of the surface shall also be the owner of the minerals and that such surface owner shall be entitled to receive the "full one-eighth royalty of all oil, gas or other minerals produced from his respective tract of land * * *." Hence, in this case the facts are clearer in support of the non-apportionment rule than they were in the Garza case.

█ The lands were judicially partitioned and no one appealed or has protested that fact, then or now. It is now an accomplished fact, and subsequent events can not undo it. Art. 6100, Vernon's Ann. Civ.Stats.; Hanrick v. Hanrick, 110 Tex. 59, 173 S.W. 211, 214 S.W. 321; Bankston v. Bankston, Tex.Civ.App., 206 S.W.2d 839; Ramsey v. McKamey, Tex.Civ.App., 138 S.W.2d 167; Farias v. Clements, Tex. Civ.App., 99 S.W.2d 1018; Garza v. Kenedy, Tex.Civ.App., 291 S.W. 615; Richardson v. Trout, Tex.Civ.App., 135 S.W. 677.

█ The trial court correctly concluded that the 1940 partition decree partitioned both the surface and sub-surface, but appellee, in further support of the judgment, urges that the recitals of the decree limit the partition to the surface only. The phrase relied upon to achieve this result is the one which provides, "subject only to the oil, gas and mineral lease or leases, royalty deeds or conveyance, and mineral conveyances, adjudicated against the respective tract or tracts, and those holding under him * * *." We do not deem it necessary to set forth the original lease, but our examination of it shows that it contains neither a pooling nor an entirety clause. Certainly, we could not construe that recital to cancel the meaning of the express clause which follows the "subject to" clause, and which declares that there is an intent to partition "the full one-eighth royalty of all oil, gas or other minerals

produced from his respective tract * *." The "subject to" clause merely recognizes the existence of the lease and the rights of the leaseholder, who does not here complain of any increase nor diminution of its rights. In McRae v. Japhet, Tex.Civ.App., 269 S.W. 829, 832, the deed to the lands was " 'subject to all the terms and provisions of the oil lcase.' " That fact, as here, was urged to result in an apportionment among owners of lands covered by the original lease. The contention was denied by the Commission of Appeals. Japhet v. McRae, Tex.Com.App., 276 S.W. 669.

Appellees also urge that the partition decree did not partition the sub-surface on the grounds that the Garza case applied only to voluntary partitions, but not to judicial partitions. As stated by the Garza case [147 Tex. 525, 217 S.W.2d 993]: "This Court is definitely committed to the rule of non-apportionment in cases of ordinary conveyances, and we see no valid reason for adopting a different rule where the segregation is effected by a voluntary partition." We likewise find no valid reason for a distinction between voluntary and judicial partitions which would result in non-apportionment in the case of the former and in apportionment in the case of the latter.

Having concluded, as the trial court did, that the partition decree effectually partitioned the sub-surface, and that the royalty was non-apportionable, what is there in this case that subsequently pooled the minerals? The claim is made and the trial court held that the royalties are pooled, not with reference to 742.68 acres covered by the existing lease, but with reference to 682.5 acres of land which were allocated to the well for gas allowable purposes by order of the Railroad Commission of Texas. Hence, the trial court held that the order of the Railroad Commission compelled a pooling.

■■ Shortly before the trial court entered its judgment, the Supreme Court of Texas handed down its opinion in Ryan Consolidated Petroleum Corp. v. Pickens, 24 Tex.Sup.Ct.Rep. 385, 4 Oil and Gas Reporter 701. The opinion held that applicants for a permit to drill a well could and did estop themselves from denying that a forced pooling could result. The case was probably the basis of the trial court's decision. However, the opinion was recently withdrawn entirely. 285 S.W.2d 201. The new and substituted opinion affirms the rule of non-apportionment announced and long followed in Japhet v. McRae, Tex. Com.App., 276 S.W. 669. It reaffirms the law of capture, and expressly holds that the Railroad Commission can do nothing more than declare illegal the drilling of wells which are prohibited by Rule 37. It "cannot change the law of Texas", [285 S.W.2d 207] and it "has not been given the power to determine property rights as between litigants."

■ The orders of the Railroad Commission can not compel pooling agreements that parties themselves do not agree upon. Ryan Consolidated Petroleum Corp. v. Pickens, supra, affirming Pickens v. Ryan Consolidated Petroleum Corp., Tex.Civ.App., 219 S.W.2d 150; Harris v. Wood County Cotton Oil Co., Tex.Civ.App., 222 S.W.2d 331; Mueller v. Sutherland, Tex.Civ.App., 179 S.W.2d 801; Nale v. Carroll, Tex., —— S.W.2d ——, affirming, Nale v. Carroll, Tex.Civ.App., 266 S.W.2d 519.

Since there was a complete partition and no subsequent pooling, the owners of the tract upon which the well was drilled are entitled to the royalty. The judgment is reversed and rendered that the appellees take nothing and that costs be adjudged against appellees.