**FRENCH et al. v. GEORGE et al.**

No. 5390.

Court of Civil Appeals of Texas. Amarillo.

Feb. 9, 1942.

Rehearing Denied March 9, 1942.

J. B. Clark, of Shamrock, and Thompson & Barwise, of Fort Worth, for appellants.

Hill & Adkins, of Shamrock, for appellee R. L. George.

W. C. Barnett, Jr., of Houston, Amicus Curiae.

STOKES, Justice.

On or before January 1, 1937, the appellants and appellees, in various and sundry proportions not material here, owned all of the mineral rights and interests in various subdivisions of Section 76, Block 17, H. & G. N. Ry. Co. Surveys in Wheeler County. On that day they jointly executed to DuMar Oil & Gas Company an oil and gas lease on 240 acres, described in separate tracts and being the E/2 of the NW/4, the S/2 of the NE/4, and the E/2 of the SE/4, of said Section 76. .The consideration recited in the lease was $10 and other good and valuable considerations, and it was provided therein that the lease should remain in force for a term of ten years and as long thereafter as either oil or gas was produced from any well on the land covered by the lease. It provided further that if a well should not be commenced on the leased land within one year from its date, the lease could be continued in force by the payment of rentals in the sum of $240 each 12 months during the primary term. The royalty reserved to the lessors was ⅛ of any oil or gas that might be produced, same to be paid or delivered to the "lessor." The lease contained the usual provision that all of the lessors, whether one or more, should be designated as "lessor", and the DuMar Oil & Gas Company as "lessee."

The DuMar Oil & Gas Company drilled a well on the SE/4 of the NW/4 of the section and same proved to be a producer of gas in September, 1937. The gas has been sold but none of the royalty has been paid. This suit was instituted by R. L. George, May George, L. B. George, Clayton C. George, and C. W. George against the DuMar Oil & Gas Company, in which the plaintiffs sought to recover the royalty due from the production of gas from the well, and the DuMar Oil & Gas Company filed a bill of interpleader in which the plaintiffs and Arthur Scruggs, Mrs. W. M. Schenck, Pauline Stripling French, Thomas C. Smith, Katherine Smith Brander and her husband, were named as cross-defendants. It prayed that all of the cross-defendants be required to interplead and that, upon hearing, the respective interests in the royalty be determined.

The case was tried before the court without the intervention of a jury, and the trial developed into a controversy over the construction of the oil and gas lease. Those parties to the litigation who did not own any interest in the minerals in and under the SE/4 of the NW/4, being the 40-acre tract upon which the well was drilled, contended that the lease was what is commonly known as a unitized or pooling lease, and that all of the interested parties were entitled to participate in the royalty from any oil or gas that might be produced from any portion of the entire 240-acre tract. The Smiths, the Georges and appellant, Pauline Stripling French, contended that the lease was not a pooling or unitized lease. They asserted its proper construction to be that, although all of the parties had joined in it and, notwithstanding that, before the lease was executed, the ownership of the oil, gas and mineral rights was vested in different parties in the several tracts included in the lease, yet, the effect and proper construction of the lease was that the royalty in each of the tracts was to be paid by the lessee to the lessors in proportion to the interests owned by them only in the tract upon which oil, gas or other minerals might be produced.

The judgment rendered by the court, in effect, decreed that the lease was a unitized or pooling instrument, and awarded the accumulated royalties to the parties plain-

tiff and defendant in proportion to the interests owned by them in the oil, gas and mineral rights in the entire 240 acres covered by the lease. Pauline Stripling French, Thomas C. Smith and Katherine Smith Brander, being dissatisfied with the judgment, gave notice of appeal and present the case in this Court for review upon the same contentions made by them in the court below, that is, that the lease should be construed as a separate lease by each of the parties of the oil, gas and minerals in and under the tract owned by him, or them, respectively, and there having been only one well drilled on the entire 240 acres, the royalties on the production of gas from the well, which was drilled on the SE/4 of the NW/4 of the section, should be paid in the proportions of ⅛ to the Smith interests, ⅛ to Pauline Stripling French, and ¾ to the George interests, because they were the owners, in those proportions, of the oil and gas in that tract before the lease was executed. Thus, the single question presented by the appeal is whether or not the lease is a unitizing or pooling agreement between the lessors, or whether it should be construed, as contended by appellants, as separate leases by the owners of the oil and gas in the respective tracts of land.

The lease is in the ordinary form in use in this jurisdiction and, other than naming the numerous lessors and the fact that a number of lessors, instead of only one, signed it, there is no provision or suggestion contained in it that is different in any respect from what it would have been if it had been executed by only one lessor. Its first paragraph names all of the lessors and designates them "Lessor (whether one or more)" and they are thereafter referred to only as "the lessor." It contains a provision that it shall remain in force for a term of 10 years and as long thereafter as either oil or gas is or can be produced from any well "on said land." The royalties reserved by the "lessor" and which shall be paid by the lessee are (a) on oil, ⅛ of that produced and saved "from said land," and (b) on gas produced "from said land," ⅛ of the gas sold or used. The 13th paragraph provides that the lessor expressly waives the necessity of offsetting any well on any land contiguous to the land covered by the lease and waives any damage for failure to offset any such well or wells. It further provides that one producing gas well on each 160 acres of land covered by the lease shall constitute complete development and offset in so far as gas production is concerned.

There was no testimony introduced at the trial and the record contains nothing except the lease itself which would aid us in the conclusion as to what was in the minds of the lessors at the time it was executed. We think the provisions of the 13th paragraph of the lease indicate strongly that the lessors intended to pool their interests and participate in the royalties in proportion to the interests owned by them in the entire 240 acres as one tract. The effect of that paragraph is to continue the lease in full force and effect on the entire 240 acres as long as gas is produced from any portion of it. It is not likely that the lessors would have subjected themselves to such a risk if they had not believed they would obtain some benefit from production of gas on those portions of the land that did not belong to them before the lease was executed. None of them, except the Georges, owned any interest in the gas on more than 40 acres of the 240 acres covered by the lease, yet they all agreed that one producing gas well on each 160 acres of the land covered by the lease should constitute complete development of the entire tract and serve as an offset in so far as gas production was concerned. Moreover, the fact that they all executed a single lease and designated themselves as lessor, whether one or more, indicates to our minds that it was their purpose and intention to make a unit of the several tracts owned by them and treat it as such for the purpose of the lease. While the tracts of land are separately described, some of them consisting of 40 acres each and others consisting of 80 acres each, the owners of the respective tracts are not designated and the several parcels are referred to and treated throughout the lease as one tract. If the parties had intended that each tract should, in effect, constitute a separate lease so that the royalties would be paid to those lessors only who owned the oil and mineral rights in that tract, it would have been a simple and easy matter for them to have inserted such provision in the lease. Indeed, it would seem that if such had been their intention, they would have executed separate leases instead of joining in one lease.

Appellants cite us to the case of Japhet et al. v. McRae et al., Tex.Com.App., 276 S.W. 669, and, while admitting that it does

not present the exact point contended for by them, they insist that the principle of law involved in that case is applicable to the instant case and that the legal conclusions should be the same. We do not consider the Japhet case analogous to the provisions of the lease and the legal question involved here. In that case the lease was executed by a predecessor in title of the parties involved in the litigation and, after executing the lease on the entire 15 acres, he sold the south 10 acres, which was ultimately acquired by one party, and the north 5 acres he sold to others. An oil well was drilled and oil produced upon the 10-acre tract, and the owners of the 5-acre tract contended they were entitled to participate in the royalties. In holding that each of the owners was entitled to all of the royalties from the oil produced on his tract, Judge Powell, speaking for the Commission of Appeals, said that when Keeble purchased the 5-acre tract he knew that the lessee had the right to drill anywhere at its pleasure. He knew that part of the 15 acres might never be developed. He traded with his eyes wide open to the rights of the various parties. No such circumstances exist in the instant case. It is not a question here of the legal rights of the parties in the absence of a contract. It is a question of what they intended by the provisions which they inserted in the lease. There was no contractual relationship between the owners of the 15 acres involved in the Japhet case. Here we have a written contract signed by all of them and each person who signed it must be bound by its terms. As we have already shown, the lease is replete with provisions which strongly indicate that the purpose and intention of the parties at the time it was executed was to pool their interests and participate in the royalty from any producing well that might be drilled on any portion of the entire 240 acres included in the lease.

It seems to be established as a general rule of law that where several owners of adjoining tracts of land unite in a single lease to a third party for development of oil or gas as a single tract, and provision is made for delivery of the royalty to the lessors, in the absence of an agreement to the contrary, the royalties must be divided among the lessors in the proportion that the area of the tract owned by each bears to the total area covered by the lease, and the ownership of the tract upon which a well may be drilled and from which oil may be produced is a matter of no consequence. Lynch et al. v. Davis et al., 79 W.Va. 437, 92 S.E. 427, L.R.A.1917 F, 566; Seal et al. v. Banes et al., 183 Okl. 203, 80 P.2d 657. The lease here involved contains no provision or intimation that the parties who executed it entertained an intention to vary the general rule. Indeed, it would seem that the only rational construction of the lease brings it squarely in line with the general rule of law pertaining to like contracts. There is no provision of the lease which indicates that any of the parties entertained a contrary purpose or intention. We are, therefore, forced to the conclusion that it effected a pooling of the royalties between the lessors in proportion to their interests in the entire leased premises.

What we have said indicates that, in our opinion, no error is shown in the conclusion reached by the court below, and its judgment will therefore be affirmed.