GARZA et al. v. DE MONTALVO et al.

No. 11826.

Court of Civil Appeals of Texas.

San Antonio.

June 16, 1948.

Rehearing Denied Sept. 15, 1948.

Bismark Pope, of Laredo, John A. Pope, Jr., of Rio Grande City, and Sawnie B. Smith, of Edinburg, for appellants.

Kelley, Looney, McLean & Enochs, of Edinburg, L. Hamilton Lowe, of Austin, and A. J. Vale, of Rio Grande City, for appellees.

MURRAY, Justice.

This is an appeal by Eugenio Garza and wife, Florinda de Diaz de Garza, Maria Garza, a feme sole, Nievas Garza and wife, Maria C. de Ramirez de Garza, Olivia Garza, a feme sole, Horacio Garza, Filiberto A. Garza and wife, Francisca Rodriguez de Garza, and Luis Garza, Sr., and wife, Maria de Jesus Ramirez de Garza, who shall hereafter be referred to as Garza appellants, from a judgment of the District Court of Nueces County, among other things, awarding to Ernestine G. de Montalvo, a widow, Romualdo Garza and wife, Julia M. Garza, and Sabas Garza de Pena, a widow, who shall hereafter be referred to as Garza appellees, an undivided interest, in different proportions, in the mineral royalty rights of 1163 acres of land out of the La Sal Colorado Grant in Starr County, Texas. The Sun Oil Company and certain so-called "royalty purchasers" were parties to the suit, but the real controversy is between the Garza appellants and Garza appelles above named. The Garza appellants are seven of the children (joined by their respective spouses where married) of Eugenio Garza Garcia and wife, Crisanta Laureles de Garza, and the three Garza appellees (joined by their respective spouses where married) are the remaining three children of that couple.

According to the findings of the trial judge, on January 27, 1923, Eugenio Garza de Garcia and wife, Crisanta Laureles de Garza, were the owners of all the 1163 acres here invloved, except 53 acres owned separately by Romualdo Garza. On October 25, 1930, Eugenio Garza Garcia died intestate in Starr County, Texas, and no administration of his estate was had nor was any necessary.

On September 25, 1933, Crisanta Laureles de Garza and her ten children (all married children being joined by their respective spouses) executed an oil, gas and mineral lease upon these 1163 acres of land in favor of Homer P. Lee. This lease was shortly thereafter transferred and assigned to Sun Oil Company, the present owner of the same. The parties in executing this lease acted as tenants-in-common as to the 1163 acres, except as to Tract No. 4, which contains 53 acres, and was owned separately by Romualdo Garza. Crisanta Laureles de Garza died intestate in Starr County after the execution of the lease and while it was in full force and effect, leaving as her heirs her ten children, all of whom had joined her in the execution of the mineral lease. No administration was required or had on her estate.

On or about December 20, 1937, the ten children of Eugenio Garza de Garcia and Crisanta Laureles de Garza, and while this mineral lease was in full force and effect, after the death of their mother, and before any production of oil, gas or other minerals was obtained from said lands, entered into a partition agreement which made no mention of the mineral estate, nor did the Sun Oil Company participate in this partition agreement. Later oil was produced from each of the tracts set aside to the seven children who are the Garza appellants herein, and none has been produced from the tracts set aside to the three children who are Garza appellees herein.

The trial was to the court without the intervention of a jury and resulted in judgment giving the Garza appellees a right to participate in all oil royalties from the entire 1163 acres on a pro rata basis.

■ We are of the opinion that the trial court did not err in so holding. The 1163 acre tract was not owned jointly by the ten Garza heirs, but a certain 53 acre tract thereof was owned separately by Romualdo Garza in his own right. Therefore, when

the mineral lease was executed to Homer P. Lee, on September 25, 1933, it was a unitized lease. Brown v. Smith, 141 Tex. 425, 174 S.W.2d 43; Parker v. Parker, Tex.Civ.App., 144 S.W.2d 303.

■ In French v. George, Tex.Civ.App., 159 S.W.2d 566, 569, it is said:

"It seems to be established as a general rule of law that where several owners of adjoining tracts of land unite in a single lease to a third party for development of oil or gas as a single tract, and provision is made for delivery of the royalty to the lessors, in the absence of an agreement to the contrary, the royalties must be divided among the lessors in the proportion that the area of the tract owned by each bears to the total area covered by the lease, and the ownership of the tract upon which a well may be drilled and from which oil may be produced is a matter of no consequence."

■ The fact that Romualdo Garza afterwards conveyed his 53 acres to his brothers and sisters and then entered into a partition agreement whereby each owner received a divided interest in the 1163 acre tract did not have the effect of changing the unitized lease as such. It remained a unitized lease after the partition. In 140 A.L.R. 1283, it is said:

"It seems that a purchaser of land ordinarily takes the same subject to the rights of others to share in oil and gas produced therefrom under an existing lease or agreement pooling royalty interests, if the conveyance is received with notice of such interests."

See also, Standard Oil Co. of California v. John P. Mills Organization, 3 Cal.2d 128, 43 P.2d 797; Merrill Engineering Co. v. Capital Nat. Bank, 192 Miss. 378, 5 So. 2d 666; Hunt Production Co. v. Dickerson, Tex.Civ.App., 135 S.W.2d 597.

■ Appellants contend that the trial court erred in finding that Romualdo Garza owned a separate tract of 53 acres out of the 1163 acre tract. We feel that the stipulations of the parties were clearly sufficient to support the finding.

■ Appellants contend that the partition agreement reciting that the 1163 acre tract was held by the ten Garza children as owners in common, the Garza appellees were thereby estopped to assert that any part of such land was owned by one of them in severalty. We cannot sustain this contention. It is true that at the time of the execution of the partition agreement the entire 1163 acre tract was held by all of the owners as tenants in common, but this was after Romualdo had conveyed his 53 acre tract to the other Garza heirs. This recital in the partition agreement could not estop Romualdo from claiming that at the time of the execution of the mineral lease on the 1163 acre tract he owned a certain 53 acres thereof, separately from the other heirs. Whether or not the mineral lease was unitized depends upon the state of the title at the time such lease was executed and not some years later when the partition agreement was executed.

■ Garza appellees contend that the royalties from the 1163 acre tract should be apportioned among the Garza heirs, for the reason that the partition agreement was made after the minerals had been severed from the surface estate by the mineral lease now held and owned by Sun Oil Company, and therefore such partition agreement effected only a partition of the surface estate and did not effect a partition of the mineral rights, no mention of said mineral rights having been made in the agreement. Appellees further contend that in order for the agreement to have effected a partition of the mineral rights it would have been necessary for the owner of the 7/8 mineral estate held by the lessee to have joined in the partition. We overrule these contentions. It is true that the execution of an oil, gas and mineral lease by the owners of a tract of land has the effect to sever 7/8 of the mineral estate from the surface estate of the land. 31-A Tex.Jur. p. 188, § 117, and authorities there cited. It is equally true that the owners or lessors retain a 1/8 of the mineral estate, and it is an interest in land. In 31-A, Tex.Jur. p. 191, § 118, it is said:

"Lessor's Estate or Interest—Subject to the grant evidenced by the lease, the lessor retains all other rights originally owned by him. He has the ownership of the surface estate, and such ownership includes the

right of possession and control, subject only to the lessee's mineral easement. That part of the minerals not covered by the lease belongs to the lessor. But the minerals included in the lease pass to the lessee and so the lessor is divested of the right to either possess, use, or dispose of the gas and oil in place in the land described in the lease as soon as the lease is executed. Since the estate of the lessee in the minerals is a determinable one, the lessor has a reversionary interest in the mineral estate conveyed by the lease, which has been designated a possibility of reverter. His estate under the lease is an interest in land, subject to taxation, and to execution and sale thereon, including the possibility of reverter.

When, subsequent to the execution of the mineral lease but prior to production, the ten owners of the 1163 acre tract executed the partition agreement setting aside to each joint owner his interest in a separate and fully described tract with the following provision:

"And all the other parties to this Agreement of Partition, in consideration of the premises, do hereby give, grant, setover, convey, release and confirm unto (allottee) * * * the last above described premises, * * * together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and also all the estate, right, title, interest, property, possession, claim and demand whatsoever that they have in and to said Tracts * * * as above described."

such partition agreement had the effect to partition the mineral interest retained by the owners or, in other words, the ⅛ royalty interest and the possibility of reverter, subject however to the unitized mineral lease then in existence upon such 1163 acre tract. The ⅛ royalty interest is clearly included in the terms, "estate," "right," "title," "interest" and "property."

Appellees call our attention to the cases of Wettengel v. Gormley, 184 Pa. 354, 39 A. 57, and Campbell v. Lynch, 81 W.Va. 374, 94 S.E. 739, L.R.A.1918B, 1070, and the other cases which follow these cases. These cases have been in effect overruled, and the vast majority of the decisions upon this question refuse to follow these cases. The courts of this State have definitely refused to follow this line of decisions. Japhet v. McRae, Tex.Com.App., 276 S.W. 669; Hinds v. McCord, Tex.Civ. App., 45 S.W.2d 442; Mueller v. Sutherland, Tex.Civ.App., 179 S.W.2d 801. The Wettengel and Campbell cases were based upon the theory that the ⅛ retained royalty in a mineral lease was no part of the real estate but was to be treated as rent, as in tillage or agriculture leases. In this State it has been definitely held that retained royalties in a mineral lease are a part of the land and are not personalty. State ex rel. Moody v. Hatcher, 115 Tex. 332, 281 S.W. 192; Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021, 80 S.W.2d 741; Stephens v. Stephens, Tex.Civ.App., 292 S. W. 290; Sheppard v. Stanolind Oil & Gas Company, Tex.Civ.App., 125 S.W.2d 643. We are thus precluded from following the theory upon which those cases were decided.

Appellees contend, however, that the only question definitely decided in this State is that where a part of the land under lease is set aside by sale and conveyance that the mineral estate goes with the surface estate though not mentioned in the conveyance, but that this does not decide the question as to whether the same result is accomplished by a mere partition of the land by joint tenants. It is pointed out that a partition of land does not convey title, but merely dissolves the joint tenancy and changes an undivided interest to a divided or separate interest. This is undoubtedly true. 32 Tex.Jur. 146; Davis v. Agnew, 67 Tex. 206, 2 S.W. 43; Jones v. State, Tex.Com.App., 5 S.W.2d 973; Cleveland v. Milner, 141 Tex. 120, 170 S.W. 2d 472; Houston Oil Co. v. Kirkindall, 136 Tex. 103, 145 S.W.2d 1074; Pendery v. Panhandle Refining Co., Tex.Civ.App., 169 S.W.2d 766; Hamill & Smith v. Ogden, Tex.Civ.App., 163 S.W.2d 725. However, we feel the fundamental question is the same. If the retained royalty is real estate it goes with the land in either case, but if it is personalty it does not go with the land in either case. We feel that no distinction can be made between a segrega-

tion of a part of the leased premises by conveyance and one made by partition. The parties were bound by the partition agreement and it had the effect to partition not only the surface estate but also the mineral estate, subject however to the unitized mineral lease in existence on the entire tract.

The trial court did not err in excluding the alleged warranty deed from Eugenio G. Garcia and wife to certain Garza heirs, purporting to convey a certain 300 acre tract out of the 1163 acres herein involved. The description in this deed is so vague and indefinite that the tract purported to be conveyed cannot be identified. Turner v. Hunt, 131 Tex. 492, 116 S.W.2d 688, 117 A.L.R. 1066; Gatewood v. Graves, Tex.Civ.App., 241 S.W. 264; Smith v. Sorelle, 126 Tex. 353, 87 S. W.2d 703. No effort was made to identify the tract by parol testimony.

The judgment of the trial court will be amended so as to declare each one of the Garza heirs to be the owner of the minerals in, on or under the respective tracts of land awarded to him in the partition deed, subject to the unitized mineral lease held by the Sun Oil Company covering the 1163 acres herein, and subject to the rights of royalty holders as set forth in the judgment, and the judgment as thus amended is affirmed. The costs of this appeal will be taxed against the Garza appellants.

Amended and affirmed.