LOUIS GARZA V. ERNESTINA G. DEMONTALVO.

No. A-1920. Decided February 2, 1949.
Rehearing overruled March 23, 1949.
(217 S. W., 2d Series, 988.)

*John A. Pope,* of Rio Grande City, *Bismark Pope,* of Laredo, *Swanie B. Smith,* of Edinburg and *A. W. Walker, Jr.,* of Dallas, for petitioners.

The Court of Civil Appeals erred in holding that the partition deed executed by the Garza heirs did not have the effect of partitioning their royalty interests under the existing oil, gas and mineral lease in the same manner that partition was made of the surface and of the revisionary mineral estate. Merrill Eng. Co. v. Capital National Bank, 192 Miss. 378, 5 So. (2d) 666; Blackwell Oil & Gas Co. v. Whited, 81 Okla., 45, 196 Pac. 688; Coyne v. Simrall Corp., 140 Fed. (2d) 574.

*A. J. Vale,* of Rio Grande City, *Kelly, Looney, McLean, & Enochs, Jackson Littleton, L. C. McLean* and *Rogers Kelley,* of *Edinburg,* and *L. Hamilton Lowe,* of Austin, for respondents.

MR. JUSTICE HART delivered the opinion of the Court.

The original parties to this suit are the ten heirs of Engenio Garza Garcia and his wife, Crisanta L. de Garza. Three of these heirs, who for convenience will be called the Garza plain-

tiffs, brought the suit against the remaining seven, who will be called the Garza defendants, and Sun Oil Company, to determine the title to the mineral estate, and particularly the royalty interests, in 1163 acres of land in Starr County, Texas. The facts, which were established by stipulations of the parties and by documentary evidence, may be summarized as follows:

Eugenio Garza Garcia and his wife were the owners of 1110 acres of the land in controversy. On January 27, 1923, Eugenio Garza Garcia and his wife executed and delivered to the seven Garza defendants a deed to "300 acres of land more or less" out of the 1110-acre tract. Garcia died in 1930, leaving his wife and their ten children as his heirs. On September 25, 1933, the widow and all of the children made an oil and gas lease of this land. This lease also covered a tract of 53 acres, which was owned individually by one of the children, Romualdo Garza. The lease was in the usual form, referring to the widow and the children collectively as "lessor", and making no provision for separate treatment of the 53-acre tract apart from the rest of the land covered by the lease. The lessee's interests under this lease were assigned in 1934 to Sun Oil Company, which still owns the lease. On January 20, 1934, Crisanta L. de Garza died, and each of her ten children inherited an undivided 1/10 interest in her estate.

In 1937, the ten Garza children made a voluntary partition of their interests in the land covered by the lease. At that time no wells for oil or gas had been drilled on the leased land. Prior to the execution of the partition agreement three deeds were executed between the Garza children. On November 13, 1937, one of the sisters, Sabas Garza de Pena, joined by her husband, conveyed to two of the brothers, Filiberto Garza and Horacia Garza, 26.3 acres out of the 1110-acre tract. Romualdo Garza, joined by his wife, on November 20, 1937, conveyed to his nine brothers and sisters the 53 acres which he had owned individually. On November 22, 1937, the nine brothers and sisters in turn conveyed to Romualdo Garza 53 acres out of the combined 1163-acre tract. On December 20, 1937, all of the Garza children executed a written agreement of partition of the 1163-acre tract. This agreement, after describing the land, recites that "the parties hereto have mutually agreed to make a partition of said lands, and to hold their respective tracts in severalty, and have caused said lands to be surveyed and partitioned into Eighteen (18) Tracts, as hereinafter more specifically described; . . ."

The agreement then sets aside described tracts to the parties, in the following terms with regard to tract No. 1, identical language, except for the names of the parties, being used in connection with each of the other segregated tracts:

"NOW, THEREFORE, this Agreement of Partition, WITNESSETH:

"FIRST:—That the said Sabas Garza de Pena, and her husband, Niceforo G. Pena, PARTIES OF THE FIRST PART, shall from henceforth have, hold, possess and enjoy, in severalty as to all the other parties to this Agreement of Partition, and to them and their heirs and assigns for their share and proportion of all the lands above described, TRACT NO. 1, of this Partition described as follows, towit:" (here follows metes and bounds description of Tract No. 1).

"And all the other parties of this Agreement of Partition, in consideration of the premises, do hereby give, grant, set-over, convey, release and confirm unto the said PARTIES OF THE FIRST PART, said Sabas Garza de Pena, and her husband, Niceforo G. Pena, their heirs and assigns forever, the last above desecribed premises, being TRACT NO. 1, of this Partition, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, and also all the estate, right, title, interest, property, possession, claim and demand whatsoever that they have in and to said TRACT NO. 1, as above described."

Under the terms of the partition agreement, the acreage set aside to each of the children corresponds to the undivided interest in the whole 1163-acre tract which each would have owned, assuming that the 300-acre deed to the seventh children, as well as the other deeds referred to above, were valid. All of the acreage is segregated, except Tract No. 6 of 11.90 acres, which it was agreed that the seven Garza defendants should continue to own in common.

The concluding paragraph of the partition agreement reads as follows:

"TWELFTH: IT IS DISTINCTLY UNDERSTOOD, STIPULATED AND AGREED, by all the PARTIES TO this Agreement of Partition, that our respective shares and proportions shall be taken by us, respectively, as herein described by TRACT number, IRRESPECTIVE of any previous claim of any of us in any of said lands and premises."

The partition agreement does not mention specifically the mineral estate in the land; no reference is made to the oil and gas lease; and Sun Oil Company, which then owned the lease, did not join in the partition agreement.

Following the partition agreement there was no development of the premises for the production of oil and gas until 1942, when Sun Oil Company began the drilling of its first well. A total of thirteen wells have been drilled, the first six wells being dry holes, and wells 7 to 13 inclusive being producing wells. All of the wells have been drilled on tracts which were set apart to the Garza defendants; no well has been drilled on any tract set apart to any of the Garza plaintiffs.

Beginning in 1943 when the first producing well was completed, Sun Oil Company has paid royalty to each of the Garza defendants on oil and gas produced from wells located on his segregated tract and no royalty has been paid to any of the Garza plaintiffs. Some of the Garza defendants have conveyed royalty or other mineral interests in the tracts set aside to them, but all of the parties have stipulated that the rights of these grantees shall be recognized and no controversy exists regarding the royalty payments made to them or their right to receive future royalties. This method of the payment of royalties was continued by the Sun Oil Company until it was served with citation in the present suit, on October 19, 1945, since which date it has retained all royalties, except those sold to third parties and recognized as valid by both plaintiffs and defendants.

In the trial court, the Garza plaintiffs made the following principal contentions :(1) that the 300-acre deed to the seven Garza defendants was void, and therefore that each of the plaintiffs owned an undivided 1/10th interest in the 1110-acre tract; (2) that the lease of the 1110 and 53-acre tracts was in effect a unitized lease, so that each of the lessors was entitled to share in royalties on oil and gas produced anywhere on the combined 1163-acre tract in proportion to the acreage owned by each lessor; (3) that the partition agreement had no effect on the mineral estate but only on the surface estate, and after its execution the lessors continued to be entitled to share proportionately in the royalty from oil and gas produced anywhere on the 1163 acres.

The contentions of the Garza defendants were (1) that the 300-acre deed was effective to convey an undivided interest in the 1110-acre tract to the seven Garza defendants, thereby in-

creasing their shares and correspondingly decreasing the plaintiffs' shares; (2) that it might be conceded that the oil and gas lease was in effect a unitized lease; but (3) that the partition agreement segregated all interests of the parties in the tracts set apart to each of them, including all mineral rights, so that thereafter each party would be entitled only to the royalties on oil and gas produced from the land set aside to him.

Sun Oil Company in its answer pleaded that the Garza plaintiffs by the partition agreement had parted with all title, including title to the oil and gas, in all of the land except the tracts set aside to them, and that Sun Oil Company had correctly paid royalty "to those parties who under the terms of the partition deed became the owners of the respective tracts on which the producing wells were located and to the assigns of those parties."

Upon a trial before the district court without a jury, judgment was entered in favor of the plaintiffs. The court held that the 300-acre deed was void, that the oil and gas lease was in effect a unitized lease, that each of the Garza plaintiffs was entitled to share in the royalties from oil produced anywhere on the 1163-acre tract in proportion to his interest in the whole tract, and that the partition agreement had no effect upon the mineral estate in the land, the parties thereafter continuing to be entitled to share in the royalties in the same proportions as before the partition agreement was executed. Judgment was awarded to the Garza plaintiffs against the Garza defendants for royalties which the court held had been wrongfully paid to the defendants.

Upon appeal by the Garza defendants the Court of Civil Appeals amended and affirmed the judgment of the District Court. 213 S. W. (2d) 762. The Court of Civil Appeals held that the trial court did not err in giving the Garza plaintiffs "a right to participate in all oil royalties from the entire 1163 acres on a pro rata basis". The court also held that the 300-acre deed was void for indefiniteness of description. Nevertheless, the court held that the "judgment of the trial court will be amended so as to declare each one of the Garza heirs to be the owner of the minerals in, on or under the respective tracts of land awarded to him in the partition deed, subject to the unitized mineral lease held by the Sun Oil Company covering the 1163 acres herein, and subject to the rights of royalty holders as set forth in the judgment, and the judgment as thus amended is affirmed.

While the parties differ in some respects regarding the proper construction of the decision of the Court of Civil Appeals, all agree that that Court held that the Garza plaintiffs were entitled to share in the royalties on oil and gas produced anywhere on the 1163-acre tract, and it was primarily on this point that this Court granted the petition for writ of error of the Garza defendants.

It is in effect conceded that the Court of Civil Appeals was correct in holding that under the lease, before the partition agreement was executed, all parties were entitled to share in royalties on oil and gas produced anywhere on the leased premises. The 1110-acre tract and the 53-acre tract were treated together in the lease as one tract, although at that time they were separately owned. In the absence of any agreement to the contrary, it has been held that in this situation the owners of the separate tracts share in the royalties on oil and gas produced anywhere on the leased premises in the proportion that the area of the tract owned by each bears to the total area covered by the lease. French v. George, 159 S. W. (2d) 566, (Tex. Civ. App.,) writ of error refused.

The question remains whether the rights of the lessors were changed by the partition agreement, so as to limit the Garza plaintiffs to the minerals under the tracts set aside to them respectively. We have concluded that this was the effect of the partition agreement.

The language of the parties in their partion agreement is so broad and all-inclusive that it plainly covers minerals rights as well as all other interests in the land owned by them. Each party receives one or more tracts "in severalty", and in each instance all of the other parties "give, grant, set over, convey, release and confirm" to the awardee "all the estate, right, title, interest, property, possession, claim and demand whatsoever that they have in and to said tract . . ." The agreement goes even further to declare the intention of the parties by expressly stating in the Twelfth paragraph that the respective tracts shall be taken by the parties "irrespective of any previous claim of any of us in any of said lands and premises."

■ It is settled in this state that the interests retained by the landowner, under an oil and gas lease, including royalty, are interests in land. Sheffield v. Hogg, 124 Texas 290, 77 S. W. (2d) 2021; Tennant v. Dunn, 130 Texas 285, 110 S. W. (2d) 53; State v. Quintana Petroleum Co., 134 Texas 179, 133 S. W.

(2d) 112, 128 A. L. R. 843; Veal v. Thompson, 138 Texas 341, 159 S. W. (2d) 472. The language used in the partition agreement in several different ways expresses the parties' intention to effect a segregation of all interests in the land theretofore jointly owned by the parties. There is nothing to indicate that any exception was intended. The Garza plaintiffs, by joining in the partition agreement, expressly agreed that each of the Garza defendants should enjoy in severalty the land set apart to him and expressly relinquished to each Garza defendant all interests of every character theretofore owned or claimed by the Garza plaintiffs in such land. As a matter of law it must be concluded that the partition agreement was intended to segregate and did segregate the mineral interests of the parties, including both the possibilities of reverter and the royalty interests.

■ The Garza plaintiffs contend, however, that a partition of the mineral estate could not take place without the participation of Sun Oil Company, which as assignee of the original lessee owned the working interest in the mineral estate. All parties concede that the lessors could not by their agreement among themselves prejudice the rights or increase the obligations of Sun Oil Company. In the present case, however, Sun Oil Company has not objected to the partition. On the contrary, it recognized the agreement by making payment of royalties for over two years prior to the filing of this suit on the basis of a segregation of the mineral interests, and in this suit it has taken the position that the agreement is valid and binding on the parties thereto and that it has correctly paid the royalties. The question of what rights, if any, the lessee or his assignee would have to object to a partition by the lessors of their interests, or what would be the effect of such objection, is therefore not presented in this case. Those who joined in the agreement cannot attack it under these facts. Joyner v. Christian, 131 Texas 274, 113 S. W. (2d) 1229.

Since Sun Oil Company did not join in the partition agreement, all parties agree that Sun Oil Company is entitled to continue to develop the entire 1163-acre tract as a unit, instead of being required to develop each segregated tract as a separate unit, as it would have had to do if it had joined in the partition agreement under the holding in J. M. Guffey Petroleum Co. v. Jeff Chaison Townsite Co., 48 Texas Civ. App. 555, 107 S. W. 609. It is argued that this result is inequitable to the Garza plaintiffs because Sun Oil Company is now able to keep the lease in force as to the tracts set apart to the Garza plaintiffs with-

out paying them any royalty. In other words, if the Sun Oil Company has complied with its duty of development considering the 1163-acre tract as a whole, and if the partition agreement had the effect of segregating the mineral interests as well as the surface rights, it is conceded that by paying royalty to the Garza defendants, on whose lands the oil and gas has been produced, Sun Oil Company can hold the lease in effect as to all of the leased premises, including the tracts set aside to the Garza plaintiffs.

■ Under present conditions, it is therefore true that the Garza plaintiffs are receiving no renumeration for the burden which is placed on their lands by the lease. We do not think, however, that this fact would warrant the court in adopting a construction of the partition agreement at variance with the plain meaning of the language used by the parties. The unequal benefits received by the parties from the exploitation of the leased premises is the result of the application of their agreement to facts which have since developed. At the time the partition was agreed to, no oil or gas had been discovered on the 1163-acre tract, and it was not discovered until over five years thereafter. At the time of the execution of the agreement, there was no way of knowing whether oil and gas would be discovered, and if the parties thought about it at all, they must have realized that it was extremely unlikely that, if oil and gas were discovered, there would be an equal production per acre from all of the tracts. What the parties agreed to was a complete partition (with the exception of one small tract) of all of their interests in the land which they owned in common. There is no claim that at the time the agreement was made there was any overreaching, concleament or other inequitable conduct by any of the parties toward the others. Each party agreed that he would take his segregated tract as his share of the whole; each was satisfied with the fairness of the division; and each necessarily assumed the risk that later developments might show that what was then believed to be equal would in fact prove to be unequal. In construing the parties' agreement we must look to the natural meaning of the language which they actually used, and we would not be justified in giving it a different meaning because it is now apparent that they would not have made the same agreement if they had known then what they know now.

■ Partition deeds are put in a special class by the decisions in this State and are not subject to some of the formalities usually required of conveyances of real estate. Houston Oil Co. of Texas v. Kirkindall, 136 Texas 103, 145 S. W. (2d) 1074;

Zanderson v. Sullivan, 91 Texas 499, 44 S. W. 484; Chace v. Gregg, 88 Texas 552, 32 S. W. 520. However, they are nevertheless binding contracts and are subject to the usual rules of construction to determine their scope and application. Rio Bravo Oil Co. v. Weed, 121 Texas 427, 50 S. W. (2d) 1080, 85 A. L. R. 391; Worley v. Empire Gas & Fuel Co., 129 Texas 532, 103 S. W. (2d) 368; Kelly v. Wilson, 233 S. W. 141 (Tex. Civ. App.,) writ of error refused; Schnitzendable v. Hasting, 97 S. W. (2d) 715 (Tex. Civ. App.) ; 47 C. J. 273, "Partition", Sec. 19. We know of no rule of construction which would permit the unambiguous meaning of the language of the agreement to be departed from because later developments prove the agreement to be more advantageous to some of the parties than to others.

■ Our conclusion here is supported by decisions holding that where a portion of the leased premises is subsequently conveyed by the lessor, the royalties will not be apportioned on the basis of acreage in the absence of an express contract to that effect, but the owner of each separate tract will be entitled to receive royalties only on oil and gas produced from his tract. This is the settled law in Texas. Japhet v. McRae, 276 S. W. 669 (Tex. Com. App.) ; Stephenson v. Glass, 115 Texas 192, 279 S. W. 260; Hinds v. McCord, 45 S. W. (2d) 442 (Tex. Civ. App.) ; Mueller v. Sutherland, 179 S. W. (2d) 801, (Tex. Civ. App.,) writ of error refused, want of merit.

The Garza plaintiffs concede that this rule of nonapportionment of royalties is also the rule in nearly all other jurisdictions where the question has arisen in connection with conveyances of real estate, but they urge that a different rule should be applied where partition agreements are involved, citing Campbell v. Lynch, 81 W. Va. 374, 94 S. E. 739, and McIntire's Administrator v. Bond, 227 Ky. 607, 13 S. W. (2d) 772, 64 A. L. R. 630. In both of these cases it was held that the apportionment rule should be applied, in situations where the severance of ownership of the lessors' interests arose out of partitions. In the first case the partition was by judicial proceedings; in the second case partition proceedings were followed by partition deeds. An examination of the opinions in these cases, however, shows that the basis for decision in each case was that in all cases where leased land becomes owned in severalty, by whatever means the separation is accomplished, the oil and gas royalties should be apportioned on the basis of acreage, since one of the usual effects of the payment of royalties is to hold the lease in effect as to the entire acreage. No distinction is

attempted to be drawn in either opinion on the ground that a partition was involved. This Court is definitely committed to the rule of non-apportionment in cases of ordinary conveyances, and we see no valid reason for adopting a different rule where the segregation is effected by a voluntary partition.

Since we have concluded that the partition agreement covers the mineral estate as well as the surface rights, it is unnecessary to decide whether the 300-acre deed was void, as held by both of the lower courts. The partition agreement definitely and expressly settled the parties' respective shares and proportions in all of the 1163 acres, "irrespective of any previous claim" of any of the parties in the segregated tracts. Such a partition agreement between co-owners is binding on all parties thereto regardless of what might actually have been their exact legal shares prior to the agreement. Johnson v. Johnson, 65 Texas 87; Republic Production Co. v. Lee, 132 Texas 254, 121 S. W. (2d) 973; Edwards v. Edwards, 52 S. W. (2d) 657 (Tex. Civ. App.) writ of error refused; Hornsby v. Hornsby, 60 S. W. (2d) 489 (Tex. Civ. App.) writ of error refused; Curtis v. Aycock, 179 S. W. (2d) 843 (Tex. Civ. App.) writ of error refused.

■ The Garza plaintiffs in the trial court reserved the right to introduce parol evidence to show the intention of the parties, on the ground of explaining an ambiguity in the partition agreement, if the agreement were held to be applicable to the mineral estate. In our opinion, however, the agreement is unambiguous, and parol evidence to vary the terms of the agreement would therefore not be admissible. It becomes our duty therefore to render judgment, instead of remanding the case for a new trial.

The judgments of the District Court and the Court of Civil Appeals are reversed and judgment is rendered for the petitioners.

Opinion delivered February 2, 1949.

Rehearing overruled March 23, 1949.