Mrs. Corrie **WILLIAMSON**, Appellant,

v.

FEDERAL LAND BANK OF HOUSTON, Appellee.

No. 7126.

Court of Civil Appeals of Texas.

Texarkana.

July 14, 1959.

Rehearing Denied Aug. 4, 1959.

M. M. Guinn, Rusk, Long, Strong, Jackson & Strong, Carthage, for appellant.

Ripley E. Woodard, B. L. Templeton, Herman Gaskamp, Houston, for appellee.

FANNING, Justice.

The prior opinions in this cause are withdrawn and the following opinion is substituted therefor.

Mrs. Corrie Williamson, surviving widow and sole heir at law of W. L. Williamson, deceased, brought suit against The Federal Land Bank of Houston, Texas, seeking a declaratory judgment to the effect that a prior $\frac{1}{16}$ royalty reservation made by defendant affecting a 201-acre tract of land belonging to plaintiff had expired by reason of there having been had no actual production of oil, gas and minerals from said 201-acre tract within the time stipulated in the reservation. Motions for summary judgment were made by both defendant and plaintiff. Defendant's motion for summary judgment was granted and plaintiff's motion for summary judgment was denied. Plaintiff, Mrs. Corrie Williamson, has appealed.

On March 13, 1935, defendant Land Bank conveyed to W. L. Williamson by warranty deed four tracts of land in Panola County, Texas, aggregating 340 acres of land. The first tract contained 201 acres of land (being the tract sued on by plaintiff), the second tract contained 25 acres, the third tract contained 46½ acres and the fourth tract contained 67½ acres of land. The Land Bank made the following royalty reservation in said deed:

"Save and except an undivided one-sixteenth ($\frac{1}{16}$th) interest in and to all of the oil, gas and all other minerals in, to, on and under and that may be produced from the land herein conveyed, to be paid or delivered unto said bank from royalty oil, gas, and/or other minerals *forever* in the event oil, gas and/or other minerals are produced from said land within a period

of twenty (20) years from and after May 13, 1935. Said mineral interest hereby reserved is a non-participating royalty interest and shall not participate in the bonus paid for any lease covering said land, or any part thereof, nor shall it participate in the money rentals paid to extend the term of any lease covering said land, or any part thereof. In the event oil, gas, and/or other minerals are produced from said land within said twenty year period, then said bank shall receive a full one-sixteenth ($\frac{1}{16}$th) portion *forever* to be paid or delivered to said bank free of cost to it. In the event oil, gas and/or other minerals are not discovered in, to, on and under said land within said twenty (20) years from and after May 13, 1935, then said $\frac{1}{16}$th interest in and to said minerals shall pass by this deed to the grantee herein, his heirs or assigns, subject, however to the lien retained herein as security for the payment of said purchase money notes."

On November 16, 1943, W. L. Williamson, the Land Bank vendee, executed an oil and gas lease for a primary term of 10 years to J. B. Yarborough, covering the 201-acre tract and the 25-acre tract in question, which lease contained the usual pooling agreement. On November 18, 1943, Yarborough regularly assigned this lease to Magnolia Petroleum Corporation.

On May 25, 1944, W. L. Williamson and wife, Corrie Williamson (plaintiff here), executed an oil and gas lease for a primary term of 10 years to B. W. Reed, covering the 46½-acre tract in question, which lease contained the usual pooling agreement. On May 25, 1944, Reed regularly assigned this lease to Southern Production Company.

On April 30, 1946, W. L. Williamson and wife, Corrie Williamson (plaintiff here), executed an oil and gas lease for a primary term of 10 years to R. L. Boyd, covering the 67½-acre tract in question, which lease contained the usual pooling agree-

ment. On May 14, 1946, Boyd regularly assigned this lease to Cities Service Oil Company. On June 14, 1946, W. L. Williamson and wife, Corrie Williamson (plaintiff herein), executed a ratification agreement correcting the description to the 67½-acre tract.

On February 27, 1948, Magnolia Petroleum Corporation, the owner of the lease on the 201-acre tract and the 25-acre tract in question, combined and pooled the second tract in the lease, which contained 25.52 acres on re-survey, and Southern Production Company, the owner of the lease on the 46½-acre tract in question combined and pooled said tract which contained 54.47 acres on re-survey, and Cities Service Oil Company, the owner of the lease on the 67½-acre tract in question, combined and pooled said tract which contained 62.53 acres on re-survey, and Arkansas-Louisiana Gas Company, et al., combined and pooled other leases on other lands, with all of the above referred to parties combining and pooling such leases into the George S. Reed Unit No. 1, containing 650.21 acres. Said Reed Unit was created as a unit for exploration purposes for gas development under the terms of the various oil and gas leases granted expressly by contract to the lessees and their assigns. Appellee Land Bank also joined in the said Reed Unit No. 1 with respect to the pooling and unitization therein of its royalty interest.

Among the exhibits attached to defendant's motion for summary judgment were its exhibits Nos. 12 and 13, which were certified copies of certain records of the Railroad Commission of Texas, and No. 14, which was a certified copy of certain records of the comptroller's office of the State of Texas. From these records it is clearly apparent that a producing well was drilled on the said George S. Reed Unit No. 1 and that gas and condensate in excess of the value of $100,000 were produced by said well from said unit between August 1, 1948, and May 31, 1951.

The producing well in question was located on the George S. Reed Unit No. 1,

but was not physically located on any of the three Williamson tracts (above referred to) located in the said Reed Unit. Also as above stated, the 201-acre Williamson tract in question was not located within the said Reed Unit and no production of oil, gas or other minerals was actually and physically had on the particular 201-acre tract in question prior to May 13, 1955.

It must be conceded that if actual production had been had from either the 201-acre tract, the 25-acre tract, the 46½-acre tract or the 67½-acre tract (constituting the 340 acres of land in four tracts conveyed by the Land Bank to Williamson) within 20 years from the date of said deed in 1935, that the Federal Land Bank's royalty reservation would have vested permanently.

The leases in question executed by the Williamsons above referred to contained very broad pooling clauses which clearly authorized the lessees and assigns of the Williamsons in their forming and joining in of the said Reed Unit No. 1. The said leases also contained the following (or similar) provisions:

> " * * * The commencement of a well, or the completion of a well to production, or the production of a well whether heretofore or hereafter drilled, either oil, gas or other minerals on any portion of an operating unit in which all or any part of the land described herein is embraced, shall have the same effect under the terms of this lease as if a well were commenced, completed, or produced on the land embraced by this lease and shall continue this lease in its entirety as to all property described therein. * * *"

After carefully reviewing the record, it is our opinion that there were no genuine material issues of fact for the trial court to pass on.

■■ We hold that the trial court did not err in granting appellee's motion for summary judgment because the royalty

clause reserved in the 1935 deed in question should be construed in the light of, and together with, the subsequent instruments hereinbefore referred to executed and initiated by appellee and the Williamsons and the authorized lessees and assigns of the Williamsons, all of which changed and modified the application of the original condition precedent with regard to production of oil, gas and minerals from "said land" referred to in the 1935 deed and royalty reservation, and in the light of the subsequent instruments it should be held that "said land" by virtue of being in a pooling unit which produced gas and condensate, either constructively or by contract "produced" prior to May 13, 1955, which constructive or contract production from said land caused the royalty reservation in question of the Land Bank to vest permanently. In this connection see Spradley v. Finley, Tex., 302 S.W.2d 409, and Southland Royalty Co. v. Humble Oil & Refining Co., 151 Tex. 324, 249 S.W.2d 914.

In Spradley v. Finley, supra (302 S.W.2d 409, 411), it is stated:

"Petitioners do not challenge the right of respondents to the royalties paid them according to their respective interests during the 15-year term. But the only right of the respondents to those royalties was by reason of the pooling agreement to treat production from any portion of the unit as the equivalent of production from the 97.3 and 20.4 acre tracts. It must be conceded that if production had been obtained from wells drilled upon these two tracts then the 15-year term would have been extended so long as production continued. *It would seem to follow, therefore, that if production from another part of the unit is treated as production from these two tracts so as to entitle respondents to royalty payments during the 15-year term, then equally so it would be regarded as production from the two tracts so as to extend the term.* The interests owned by LaGrone and Bourn were undivided interests in the whole of the two tracts.

"In Southland Royalty Co. v. Humble Oil & Refining Co., 151 Tex. 324, 249 S.W.2d 914, the Court held that a general form lease executed by the various owners had the effect of unitizing the lands described for development and production purposes and followed the decisions in Parker v. Parker, Tex.Civ.App., 144 S.W.2d 303 (wr. ref.) and French v. George, Tex. Civ.App., 159 S.W.2d 566 (wr. ref.). Here we have the unitization and pooling specifically provided for."

Each and all of appellant's points have been carefully considered and are respectfully overruled.

The judgment of the trial court is affirmed.